66 So.2d 311

ESTOPINAL v. ESTOPINAL.

No. 40718.

June 1, 1953.

Claude F. Kammer, New Orleans, for plaintiff-appellant.

Bentley G. Byrnes and Edward A. Wallace, New Orleans, for defendant-appellant.

LE BLANC, Justice.

This is a suit for absolute divorce based on the ground of adultery. The plaintiff is the husband who charges the wife with having committed adultery at various times, and particularly on November 17, 1950.

A child was born of the marriage on May 12, 1950 and plaintiff alleges that because of the shameful conduct of the defendant and the dishonor which she has brought upon him and their child, he desires and is entitled to secure a divorce from her and obtain the permanent care, custody and control of the child. He prays accordingly.

In her answer defendant admits her marriage to plaintiff and the birth of their child but she denies all allegations relating to any alleged adultery. She avers that the child is presently under her care, custody and control which she is entitled to during the pendency of the suit and permanently thereafter. With her answer she couples a rule nisi for alimony which she asks for the support and maintenance of the child, in the sum of $50 per month.

After trial in the district court there was judgment in favor of the plaintiff granting him an absolute divorce; however

custody of the minor child was awarded to the defendant with certain rights of visitation granted to the plaintiff who was condemned to pay alimony for its support in the sum of $50 per month, payable semimonthly in installments of $25. The defendant appealed from that part of the judgment granting plaintiff a divorce and plaintiff appealed from that part which awarded the custody of the child to the defendant.

▆ The only direct proof of the adultery charged came from the lips of the corespondent, one Frederick Turpin, whose testimony is strongly assailed by counsel for defendant. Counsel complains that it was given too much weight by the trial judge. Such testimony is generally considered to be of a rather reprehensible nature and the general rule is that it should be weighed with great caution before being accepted as true. In Mouille v. Schutten, 190 La. 841, 183 So. 191, 195, it is stated: "There is no law which disqualifies a corespondent from testifying as a witness for or against the alleged wrongdoer. * * * While he [the trial judge] had the right to disbelieve the witness for any reason which, in his opinion, affected his credibility or showed that he was untruthful and unreliable, he had no right to decline to hear and consider his testimony solely because it is unusual and reprehensible for a man to tell of his intimacies with a woman. * * * Whether or not the testimony is voluntary or involuntary, the reasons that prompted it, and all the facts and circumstances surrounding the case should be carefully considered and if it then appears that the witness has told the truth the judge cannot arbitrarily reject this type of evidence."

Clark v. Clark, 207 La. 606, 21 So.2d 758, 760, is a case in which, for the reasons stated, the testimony of a corespondent was rejected but the Court nevertheless stated that in considering such testimony, " * * * we need only to say that while a corespondent is not disqualified by law from testifying with reference to his intimacies with the erring spouse, the statements made by him must be corroborated and weighed with great caution before being accepted as true * * *."

In this case the trial judge appears to have been extremely cautious in receiving and in weighing the corespondent's testimony. Indeed, while it was being given he interrupted the proceeding to state that it was "rather distasteful" for him to have to listen to the witness testify and attach such credibility to his testimony as he saw fit. He indicated that it was only out of deference to the ruling of this Court that he would do so. In a short statement which he dictated in the record and in which he reviewed the evidence before announcing his decision, he again referred to the care with which he had received and weighed the testimony of this witness but nevertheless concluded that it was supported by several circumstances which ap-

peared in the case, and by the defendant's apparent evasiveness or her inability to explain any of them to his satisfaction.

The particular act of adultery alleged on November 17, 1950 was testified to by the corespondent as having taken place in a room at the De Soto Hotel between the hours of seven-thirty or eight o'clock and a quarter to eleven that night. The hotel register shows that· a couple registered that night under the name of the corespondent and someone supposed to be his wife. The corespondent testified that they checked out at about eleven o'clock. The hotel record shows that the charge made for the room was paid on November 18, 1950 and this, the manager of the hotel testified, would indicate that the party or parties who occupied the room remained overnight. On the basis on which this testimony would contradict the corespondent with regard to the time he says he checked out, counsel for defendant contends that his testimony on this most vital point in the case is not worthy of belief.

The hotel manager was testifying merely concerning what the hotel records showed, which was that a charge made for a room which had been occupied on the night of November 17, 1950, had been paid and, according to the record, the payment had been credited on November 18, 1950. Whilst the manager did testify that the record would indicate that the occupants remained overnight, we are sure he did ·not pretend to know that the room may not have been paid for and the occupants had left during the night of November 17, 1950.

In connection with the testimony regarding the occupancy of the room at the hotel, it is important to consider the defendant's admission that she did meet the corespondent on the night of November 17, 1950 and whilst it is true that she contradicted his testimony about going to the hotel and insists that they went to a Cocktail lounge on Jefferson Highway, her testimony must yield in view of the hotel records which corroborate the testimony of the corespondent to the effect that they occupied a room there that night. In commenting on her testimony the learned district judge stated that although she admits that she met the corespondent she was "very vague" about where they went. "In fact," he states, "she has never explained where she was on the night of November the seventeenth," and that she hasn't helped him at all in trying to resolve the doubt he would otherwise have resolved in her favor, she being the woman in the case.

In this case like in all others where the appellate court is presented with an issue of fact, the rule of according great weight to the findings of the trial judge should prevail. We wish to state, however, that over and beyond the application of this rule, we have given the record our careful and deliberate consideration. Realizing with what repugnance a Court hears and weighs the testimony of a corespondent in

a divorce case, we, like the trial judge, have carefully scrutinized that of the corespondent in this case and, have to conclude, as he did, that it has been corroborated to such extent that it cannot be disbelieved.

The child whose custody is contested by the parents was about eleven months old at the time the case was tried. At that time the child was with the mother who was living with her stepfather and her mother. Her stepfather's mother also lives with them. She is a dancing instructor and gives lessons in her parent's home which seems to be ample for all of them. The child is being well taken care of and is thriving normally. Plaintiff was living with his parents and although he earnestly desires to have the child, seems to have made no special provision for its care save the attention which his mother would give it.

The law is well settled to the effect that in cases of custody of children, the mother is to be preferred unless she is shown to be morally unfit. The question posed here is, does the one indiscretion she has committed render her morally unfit? A person who is puritanically inclined would say that she is; one who is more practical would say she is not. Courts always endeavor, when possible, to take the practical view of such matters. We do not think that because of this one error in her life, grievous as it was, she should be deprived of the legal custody of the child, especially one of such tender age, requiring her care and attention more than that of the father. It is the child's own interest and welfare that is of paramount importance and we are sure that the district judge gave that matter due consideration when he held that at the time of the trial, the mother was not morally unfit to provide for its welfare. Should she prove to be undeserving in the future, the law has wisely reserved to the father the right to apply to the Court to have the decree of custody changed.

We are of the opinion that the trial judge properly disposed of both issues presented in the case and, for the reasons stated, it is now ordered that the judgment appealed from be affirmed, costs of appeal to be borne jointly by both parties.