144 So.2d 119 (1962)
Lorraine Maxey BUSH
v.
Douglas R. BUSH.
No. 51.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
Pickett & Pickett, J. S. Pickett, Jr., Many, for defendant and appellant.
Durham & Haylon, George J. Haylon, New Orleans, for plaintiff and appellee.
Before REGAN, HEARD and McCLENDON, JJ.
REGAN, Judge.
Plaintiff, Lorraine Maxey Bush, instituted this suit against the defendant, Douglas Bush, her husband, in order to obtain a judgment of divorce a vinculo matrimonii, together with custody of their five year old child. This action was predicated on the fact that she and her husband voluntarily had lived separate and apart for more than two years before suit was filed.
The defendant pleaded the exceptions of lis pendens and lack of jurisdiction ratione personae and materiae, which the trial court properly overruled. He then answered and admitted the two year separation; however, by virtue of a reconventional demand, he requested the rendition of a judgment of divorce in his favor, based on the assertion that his wife was guilty of adultery. He also sought to be awarded custody of the child, since he concluded that she was morally unfit to rear their daughter, who is of a tender age.
From a judgment awarding plaintiff both the divorce and custody of the child, the defendant has appealed.
Since the defendant has conceded that he and his wife separated on May 27, 1954, and *120 suit was instituted on May 28, 1956, there exists no doubt relative to the validity of the decree granting plaintiff the divorce.
During the course of the trial, the defendant abandoned his reconventional demand for a divorce predicated on an allegation of adultery.
Thus, the only issue which this appeal has posed for our consideration is whether the trial judge abused his discretion in awarding the mother custody of their daughter.
To evaluate which parent is better qualified to rear the child we are, in effect, relegated to choosing the lesser, in degree, of each parent's breach of conduct, insofar as the child's ultimate welfare is concerned; therefore, we find it expedient to review the history of the couple's marriage so as to explain, factually, our reason for affirming the result reached by the trial judge.
On April 8, 1951, Douglas Bush married Lorraine Maxey Bush in Sabine Parish, where they resided for eight months. They then moved to St. Bernard Parish because defendant had secured employment as a "roughneck" on a nearby drilling rig. Thereafter, the couple moved to Orleans Parish where the matrimonial domicile was established and continued to exist until their separation, which occurred on May 27, 1954. One child was born of this union in March of 1952.
On May 27, 1954, Bush assaulted his wife and on her complaint, he was charged therewith and convicted in the Municipal Court in New Orleans; as a result thereof he was fined and sentenced to jail for thirty days. While her husband was so confined, plaintiff moved from their apartment to one of her own. She remained therein for several months but was finally forced to move when her husband discovered her address and occasionally created disturbances during the middle of the night.
Approximately six to eight months after she separated from the defendant, she met Burton Chalaire, and shortly thereafter, she began living with him as his wife and her daughter also resided in this household. When this matter was tried, plaintiff conceded that she had been living with Chalaire for two and one half years and held herself out to friends and neighbors as his wife.
During the time which elapsed between the voluntary separation and the trial, she testified that the defendant made an effort to see his daughter several times. When he demanded to see the child, who had constantly been cared for by her, she was working and was, therefore, unable to leave her employment in order to bring the child to him.
Approximately one year after the voluntary separation, plaintiff charged her husband with criminal neglect in Juvenile Court and he was ordered to contribute to the support of the child. Shortly after this order was issued, defendant, through his attorney, employed a detective in September of 1955 to locate his wife and it was then that he discovered that she was living with Chalaire.
In 1956 Bush instituted suit against his wife in Sabine Parish, endeavoring to obtain a divorce on the grounds of adultery, however, the case was never tried on the merits because the wife excepted to the jurisdiction of the court ratione materiae and personae and the exceptions were maintained.
On September 7, 1957, plaintiff and Burton Chalaire applied for a marriage license; however, the ceremony was never performed since plaintiff's attorney advised her that she was not divorced from Bush and therefore she could not legally contract a second marriage.
To establish that the child was being reared in a suitable environment, plaintiff introduced the testimony of several witnesses who uniformly related that the plaintiff was a good mother who provided her child was secular and religious training, excellent physical care, love and affection. *121 They were all neighbors who further testified that Chalaire treated the child well and she, in turn, was very fond of him.
The record reflects that the child was attending a parochial kindergarten at the time of the trial and her teacher testified that she appeared to be a happy, average child.
In maintaining that the child's environment was detrimental to her welfare, the defendant asserted that Chalaire had been arrested on many occasions and the police often appeared at his residence for the purpose of arresting him. In support thereof, defendant introduced into evidence criminal index records from Orleans and St. Bernard Parishes, which reflected that Chalaire had been arrested several times between 1951 and 1956, and had been convicted for a traffic violation in 1951 and for disturbing the peace in 1953, which incidentally was long before he began to live with the plaintiff herein.
The neighbors who testified uniformly contradicted defendant's assertion that police officers constantly appeared at the Chalaire residence, and the whole tenor of the record reflects that had this accusation been true, the neighbors would certainly have been aware of it.
The defendant insists that he is able to provide the child with a suitable home and should therefore be awarded custody.
When the trial hereof occurred, he was employed on an offshore drilling rig, located in the Gulf of Mexico, and was required to work thereon seven days; thereafter, he was off for seven days and would return to Many, Louisiana, where he resides with his parents. He explained that his parents would care for the child while he was working.
The evidence, in addition to the foregoing, preponderates to the effect that the defendant has a querulous disposition and is easily angered. Plaintiff and her father both testified that he physically beat his wife on several occasions during the marriage and this is substantiated by his conviction for assault; other witnesses were produced who saw him strike his child with such force that her lip was cut and bleeding as a result thereof. His pugnacious disposition was further exemplified by the fact that he was arrested in Many, Louisiana for fighting with his father-in-law.
The defendant's testimony throughout is permeated with inconsistencies. Although he insists that he endeavored to locate his child immediately after the separation, the record does not reflect such a concerted effort until he was ordered by the Juvenile Court to contribute to her support. His wife, as we have related heretofore, testified that he only attempted to see the child several times since the separation.
In addition, the paternal grandparents with whom defendant proposes to leave the child have only seen her on those occasions when plaintiff visited the maternal grandparents in Many.
Predicated on the foregoing evidence the lower court concluded that the child should be placed in the mother's custody and our review thereof is limited to answering the question of whether the record reflects an abuse of the discretion afforded the trial judge in cases of this nature.
LSA-R.C.C. Art. 157 provides in part:
"In all cases of separation and of divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party. * * *"
In interpreting this article, judges have repeatedly emphasized that their primary concern in awarding custody is the welfare, happiness and best interest of the child.[1]
*122 Our appellate tribunals also have uniformly pronounced that a trial court's decision, in a matter involving custody of a child, will not be reversed unless the record clearly reflects an abuse of discretion by the judge thereof.[2]
Of course, while the courts have considered it wise to award custody of a child of tender years to the mother, this general rule must yield to the exception of awarding the father custody if the mother has been proven morally unfit to rear the child.[3]
In this case the mother has admitted an adulterous relationship with Burton Chalaire, which began at least six months after she left her husband. While we do not condone plaintiff's behavior in this respect, yet, under the circumstances, we do not think this conduct has been detrimental to her child's welfare. She has always represented to friends and neighbors that she is legally married and she and her paramour did attempt to marry; however, at the time of this trial, plaintiff was unable to wed Chalaire because she had not obtained a legal divorce.
In every other respect, the mother, under the existing circumstances, is providing a good home for the child and she has always taken excellent care of her daughter.
The father, on the other hand, has uniformly displayed a temperament that would disqualify him from properly rearing a young girl, and since the separation, his attitude toward his daughter appears to us to have been one of complete indifference.
We think the facts of this case are fundamentally analogous to that which was enunciated in Messner v. Messner,[4] wherein the court pronounced that the wife, although a proven adulteress, was entitled to custody, and this fact per se "did not constitute a course of conduct on her part sufficient to deprive her of the children because of her moral unfitness".
Should the plaintiff prove to be undeserving in the future, the law has wisely reserved to the father the right to apply to the court to have the decree of custody changed.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Cannon v. Cannon, 225 La. 874, 74 So.2d 147; Messner v. Messner, 240 La. 252, 122 So.2d 90.
[2] Kieffer v. Heriard, 221 La. 151, 58 So.2d 836; Sampognaro v. Sampognaro, 222 La. 597, 63 So.2d 11.
[3] Byrd v. Byrd, La.App., 128 So.2d 794.
[4] 240 La. 252, 122 So.2d 90.