194 So.2d 122 (1967)
Patricia Ann LeBLANC, Plaintiff-Appellant,
v.
Alvin Joseph LeBLANC, Jr., Defendant-Appellee.
No. 1865.
Court of Appeal of Louisiana, Third Circuit.
January 11, 1967.
*123 Jeron LaFargue, Sulphur, for defendant-appellant.
Patin & Patin, by J. Fred Patin, Lake Charles, for plaintiff-appellee.
Before FRUGÉ, TATE and HOOD, JJ.
HOOD, Judge.
A default judgment was rendered by the trial court on December 7, 1961, decreeing a final divorce between the parties to this suit and awarding to Mrs. Patricia Ann LeBlanc (now Mrs. Patricia Ann Lind) the permanent custody of their minor child, Alvin James LeBlanc. About four years later the defendant in the original suit, Alvin Joseph LeBlanc, Jr., filed a petition in this proceeding demanding that the custody of the child be removed from the mother and awarded to him. After *124 trial, judgment was rendered by the trial court on June 20, 1966, changing the custody of the child from the mother, Mrs. Lind, to the petitioner in this proceeding, Alvin Joseph LeBlanc, Jr. The defendant, Mrs. Lind, has appealed from that judgment.
As grounds for demanding a change of custody, petitioner alleges that defendant has committed certain acts of misconduct, that the child is getting no supervision nor love from his mother, and that it is to the best interest and welfare of the child that the custody be changed and awarded to the father. The defendant admits some of the alleged acts of misconduct, but contends that they did not affect the child since they were committed out of his presence and without his knowledge. She takes the position that she has now recanted and reformed, that petitioner has not met the burden of proof which rests upon him of showing that a change of custody should be granted, and that the best interest and welfare of the child would be served by allowing him to remain in the custody of his mother.
The evidence shows that petitioner has remarried, that his present wife has four children, issue of a prior marriage, and that she and petitioner have one child born of their union. Petitioner lives with his present wife and these five children in Morgan City, where he is engaged in the business of building houses. He apparently is successful in that business and has a net income of approximately $500 per month. He owns his own home, and we are convinced that if custody is awarded to him he and his wife will provide the child with adequate care, supervision and parental love.
Mrs. Lind remarried following her divorce from Mr. LeBlanc, and she lived with her second husband in Nebraska for a little less than two years. According to her testimony, she and her second husband were constantly fussing and fighting so she left the matrimonial domicile and returned to Louisiana in April, 1965. Upon her return she obtained employment as a waitress at the Service Cafeteria, in Lake Charles, and she continued to work there for about five or six months.
On or about October 1, 1965, Mrs. Lind went to Morgan City and began working as a bar maid at an establishment which was described by various witnesses as a bar, a dance hall, or a house of prostitution without beds. She admitted that during the months of October and November, 1965, while in Morgan City, she lived in adultery for a period of about four weeks with one man and for a period of about one week with another man. These admissions were confirmed by private detectives who had been employed by petitioner. During that time, of course, she was married to her second husband, who was in the Air Force in Nebraska.
On or about December 1, 1965, Mrs. Lind left Morgan City and obtained employment as a waitress and cashier in a restaurant in a bowling alley, in Sulphur, Louisiana, where she has continued to work up to the present time. Her working hours at times are from 8:00 a. m. to 4:00 p. m., and at other times they are from 4:00 p. m. until midnight.
Upon returning to Louisiana in April, 1965, Mrs. Lind and her son, who is now eight years of age, moved into the home of her mother and stepfather in Carlyss, Louisiana. The child has continued to live in that home since that time. Mrs. Lind has lived there since April, 1965, except for the two month period which she spent in Morgan City. Also living in the same home with Mrs. Lind, her son, her mother and her stepfather, are Mrs. Lind's six brothers and sisters, making a total of ten people who reside in that three-bedroom home. Mrs. Lind shares a bedroom with some of her sisters, and her child shares a bedroom with two other boys. The grandmother (Mrs. Lind's mother) takes care of the child while Mrs. Lind is at work in Sulphur and in Lake Charles, and she took care of him while the defendant was in Morgan City.
*125 The defendant testified that she plans to obtain a divorce from her present husband and to marry one James Toniette. She had not filed suit for divorce up to the time of the trial, however, and Mr. Toniette was not called as a witness to confirm his betrothal to her. Neither Mrs. Lind's mother nor any of the other residents of her mother's household were called to testify, and the trial judge correctly noted that "scant evidence was presented as to the present home situation." The child is enrolled in a good school where he appears to be an average student. Upon his transfer from Nebraska to a Louisiana school, it was found that he did not have the capacity to do second grade work, so he was enrolled as a first grade student, and at the time of the trial he was still in the first grade although his age was such that he should have been in the second grade.
After considering and carefully analyzing the evidence, the trial judge concluded that the custody of the child should be removed from the mother and awarded to the father. In his reasons for judgment, the trial judge said:
"On the basis of the recited facts and others appearing from the evidence, the court is convinced that Mrs. Lind has been engaged in a `calculated, continued course of misconduct' demonstrating her moral unfitness for custody of a child. Morris v. Morris [La.App.], 152 So.2d 299. This court believes that continued custody with the mother would be detrimental to the child and that petitioner would provide a good home. Decker v. Landry, 227 La. 603, 80 So.2d 91.
It is true that she now has respectable work and that the child is attending a good school in Sulphur. Scant evidence was presented as to the present home situation. The only certain conclusion that the court can draw is that the mother is not attending to the moral, emotional and other needs of her child. However, in view of Mrs. Lind's unfitness, the court has concluded that the best interest and welfare of the child would be served by changing his custody to the father.
This court is very reluctant to change custody of children, and is mindful of the rule of law that the mother is to be preferred in cases involving younger children; but the facts in this case give the court no reason to believe that there is any likelihood that Mrs. Lind has provided or will establish a stable home environment for the child. On the other hand, Mr. LeBlanc has a complete family situation into which Jimmy can be received and where, in all probability, he will adjust very well.
This court took the additional step of having an officer of the Calcasieu Parish Juvenile Office make a field inspection of the home situation in Sulphur and Morgan City to make certain that a proper environment would be provided for the child if allowed to remain in the custody of his mother or if placed with his father. Both homes were reported as suitable."
Ordinarily, the welfare of small children is best served by permitting the mother to retain custody. The mother's preferred right to custody, however, must yield to the superior right of the State to deprive her of the care and custody of her child if the physical, mental or moral welfare of the child requires that that be done. The paramount consideration in determining to whom the custody of the child should be granted is the welfare of the child. LSA-C.C. art. 157; Hebert v. Hebert, 159 So.2d 537 (La.App.3d Cir. 1964); Estopinal v. Estopinal, 223 La. 485, 66 So.2d 311 (1953); Tullier v. Tullier, 140 So.2d 916 (La.App.4th Cir.1962); Morris v. Morris, 152 So.2d 291 (La.App.1st Cir. 1963); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952); Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456 (1949); Gilbert v. Hutchinson, 135 So.2d 283 (La. App.3d Cir.1961).
*126 Under our settled jurisprudence, the trial judge has much discretion in awarding the custody of a child whose parents are legally divorced, and his conclusions are entitled to great weight. The determinations made by the trial judge as to custody, therefore, will not be set aside unless it clearly appears that there has been an abuse of discretion or unless the judgment awarding custody has been based upon incorrect legal principles. Hebert v. Hebert, supra; Bush v. Bush, 144 So.2d 119 (La.App.4th Cir. 1962); Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Guillory v. Guillory, supra; Kieffer v. Heriard, 221 La. 151, 58 So.2d 836 (1952); Sampognaro v. Sampognaro, supra.
In the instant suit, there is ample evidence to support the trial judge's finding that Mrs. Lind has engaged in a "calculated, continued course of misconduct demonstrating her moral unfitness for custody of the child," that she "is not attending to the moral, emotional and other needs of her child," and that there is no likelihood that she "will establish a stable home environment for the child." We cannot say, therefore, that the trial judge erred at arriving at those conclusions. We conclude that there has been no abuse of discretion on the part of the trial judge in decreeing that the custody of the child should be changed from the mother to the petitioner.
Defendant contends that the judgment appealed from should be reversed because the petitioner has failed to meet the double burden of proof which was required by a majority of this court in Gary v. Gary, 143 So.2d 411 (La.App.3d Cir.1962), and in Wells v. Wells, 180 So.2d 580 (La.App. 3d Cir.1965). (The author of this opinion has consistently disagreed with the majority in their holding that such a rule is authorized or justified under our law and jurisprudence.) It is unnecessary for us to consider the question of whether such a rule is justified under our law or, if so, whether it should be applied here, because we have concluded that in any event the judgment would be the same. If such a rule should be applied in this case, the evidence is sufficient to meet the burden of proof required by that rule. The trial judge has found, and we concur in that finding, that because of a material change in circumstances the conditions under which the child is living with his mother are detrimental to his best interests, and that petitioner is able to and will provide a good home for the child. The best interest and welfare of such child require, therefore, that the award of custody be changed from the mother to the father, and such a change must be decreed whether or not the "double burden of proof" rule is applied.
The defendant also contends that the trial judge erred in considering a report made by the Juvenile Department of Calcasieu Parish as to the condition of the mother's home and the father's home. In his written reasons for judgment, the trial judge noted that he had had an officer of the Juvenile Department of that parish make a field inspection of the home situation of both parties, and that "both homes were reported as suitable." The report was not filed in evidence and the investigator was not called as a witness. Defendant argues that this report constitutes hearsay evidence, and that she has been deprived of her right to be confronted with and to cross-examine the investigator. She demands that the judgment appealed from be reversed because of the fact that this report was considered by the court.
We are aware of the fact that reports submitted by welfare or social agencies have been considered by courts in other cases. See State ex rel. Landry v. Robin, 193 La. 789, 192 So. 349 (1939); State ex rel. Munson v. Jackson, 210 La. 1, 26 So.2d 152 (1946); In re Caronna, 197 La. 494, 2 So.2d 1 (1941); State ex rel. Hebert v. Knight, 135 So.2d 126 (La.App.1st Cir.1961); Smith v. Smith, 141 So.2d 84 (La.App.1st Cir.1962); and 23 La.L.Rev. 254-255 (1963).
*127 In spite of the fact that reports of this type have been received and considered by courts from time to time, we agree with defendant in this case that the confidential report which was submitted by an investigator for the Juvenile Department should not have been considered as evidence by the trial court, without first permitting the defendant to see the report, to be confronted by the investigator and to cross-examine him. In this instance, however, it appears that the defendant was not prejudiced in any way by the report. The only purpose in having the investigation made was to make certain that a proper environment would be provided if the child would be allowed to remain in either home. The language used by the trial judge indicates that he had tentatively concluded from the evidence that a proper environment would be provided for the child in either home, and that he ordered this investigation merely to "make certain" that that was the case. Actually, no contention was made in this suit that either the petitioner's home or the home of Mrs. Lind's mother were unsuitable, and no evidence was presented tending to show that either home, in itself, was not suitable. In the absence of any allegations or proof to the contrary, it must be presumed that a proper environment would be provided in either home. The report of the investigator was simply that both homes are suitable, and thus the investigation did nothing more than to confirm the facts which were shown in the record or which must be presumed. Even though the report was considered by the trial court, therefore, it is clear that the defendant was not adversely affected or prejudiced by it. We conclude that there is no merit to defendant's argument that the judgment appealed from should be reversed because of the fact that the trial judge considered this report.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to Mrs. Lind, the defendant-appellant.
Affirmed.