HALL, Judge.
Charles D. Brewer brought this habeas corpus proceeding against his divorced wife, Mrs. Brenda Gale Sparks Macaluso, seeking to obtain custody of the minor child, Charles D. Brewer, Jr., (aged 2) sole issue of their marriage. The defendant answered and reconvened seeking permanent custody of the child. Following a hearing the Trial Judge rendered judgment vacating the writ of habeas corpus and granting the permanent care, custody and control of the minor to defendant. Plaintiff appealed.
The facts are as follows:
Charles D. Brewer and Brenda Gale Sparks were divorced by judgment of the Chancery Court of Lee County, Mississippi, on April 18, 1967. In this judgment the custody of their minor child, Charles D. Brewer, Jr., was granted to its mother, Brenda Gale Sparks.
Following the divorce both parties remarried. Brenda Gale Sparks is now the wife of Dr. Sam C. Macaluso and resides in Jefferson Parish, Louisiana. Charles D. Brewer resides in New Albany, Mississippi.
On February 16, 1968 the Mississippi Court rendered a decree changing the custody of the child by dividing its custody between its parents for alternate periods of three months each: Under this decree Mrs. Brenda Gale Sparks Macaluso was granted custody of the child for the first three month period beginning February 17, 1968 and ending May 17, 1968, on which latter date she was required to deliver the child into its father’s custody for the second three month period.
When her first period of custody ended on May 17, 1968, Mrs. Macaluso refused to turn over the custody of the child to its father, Charles D. Brewer, as required by the decree of the Mississippi Court. As a result of such refusal Charles D. Brewer brought this habeas corpus proceeding on May 27, 1968.
*345 When the case was called for trial it was stipulated that Mrs. Macaluso presently has the custody of the child and had had since custody since February 1968. It was further stipulated that the child’s father, Mr. Brewer, had had the physical custody of the child from November 1967 until February 16, 1968. Following this stipulation plaintiff introduced authenticated copies of the Mississippi decrees and rested. Thereupon the defendant adduced testimony in support of her reconventional demand for permanent custody of the child which consisted of her own testimony, the testimony of Mrs. Ann Migliore and that of Dr. Kyle B. Hamm, a psychiatrist. Plaintiff offered no rebuttal.
Mrs. Macaluso had the legal custody of the child, by virtue of the divorce decree of April 18, 1967, during the period from November 1967 to February 17, 1968. However the record contains no explanation of the stipulated fact that Mr. Brewer had physical custody of the child during this period. The only allusion to this subject is Mrs. Macaluso’s testimony that she made many efforts to see the child during this period without success.
Mrs. Macaluso testified that when she picked up the child on February 17, 1968 and brought him to Louisiana she found him quiet, withdrawn and nervous. She stated that the child had a great fear that she would leave him. She further testified that when she would take him out of the house to visit elsewhere she could not put him down because he would scream and cry for fear she would leave him. At night she had trouble getting him to sleep and when he would finally go to sleep he would wake up during the night crying as if he were having a nightmare. The child was very withdrawn and would not make friends. If he played she would have to be somewhere near him. If he would lose sight of her he would wander through the house calling for her as if in fear she had left him. Mrs. Macaluso testified that this type of behavior had not occurred when she had the child prior to November 1967. She said that approximately a month after she brought the child to Louisiana he started talking more and seemed happier and more relaxed. She further testified that in March of 1968 her husband, Dr. Macaluso, talked to a psychiatrist (other than Dr. Hamm) about the situation and on the psychiatrist’s advice she refused to surrender the child to its father at the termination of her three months custody period.
Mrs. Ann Migliore, a friend of Mrs. Macaluso’s, testified to the unusual behavior of the child as described by Mrs. Maca-luso and it was stipulated that three other witnesses, if called, would testify to the same effect.
Dr. Kyle B. Hamm, a general psychiatrist, testified that he saw the child in his office on May 31, 1968 and June 3, 1968. (The trial commenced on June 4, 1968.) His testimony was generally to the effect that divided custody would be extremely detrimental to the child and that a child of this age could not adjust himself to being with one parent for a while and then being shifted to the other parent. He said that there would be a conflict within the child because each parent would require different behavior from the child; that the child would become confused as to where authority lies and this would make him become isolated and withdrawn. He would feel that his parents have deserted him which would cause depression manifested by lack of enthusiasm and interest and in adolescence the child would become a “loner”. Dr. Hamm explained the child could react in two ways to the change of custody: (1) he could be withdrawn from the world including his parents; (2) he would be withdrawn from his parents but take out his anger and rejection in an antisocial manner. The doctor testified that the child is actually settling down now but if the child went back to his father, he would experience depression and withdrawal again and he would slowly return to normal but this would have an effect on him comparable to what an adult would experience through the death of a parent every *346 three months. The child would not like to go through this experience regularly and would protect himself against this pain by not getting involved with either parent. He Tyould reject both parents and would not let his emotional relationship with either develop the way it should.
There is no testimony in the record concerning the condition of the child prior to the divided custody decree of February 16, 1968.
Plaintiff contends that the judgment appealed from changes a custody judgment rendered by a Court of a Sister State without any evidence being presented showing a material or substantial change in circumstances inimical to the child’s welfare subsequent to the rendition of the foreign judgment contrary to the Full Faith and Credit Clause of the Constitution of the United States.
The law in this area is well settled. Under the Full Faith and Credit Clause of the Constitution of the United States the custody judgment of the Mississippi Court is entitled to the same faith, credit and effect in Louisiana that it has in Mississippi. State ex rel. Girtman v. Ricketson, 221 La. 691, 60 So.2d 88. But the constitutional requirement of full faith and credit does not require a State Court to attach greater importance to a foreign judgment than the State granting the judgment. State ex rel. Cahill v. James, La.App., 172 So.2d 299.
Plaintiff does not contend that a Mississippi custody decree is'immutable and not subject to change or modification by the Court which rendered it when circumstances bearing on the welfare of the child have changed since entry of the decree. Neither does plaintiff contend that the Trial Court, in the instant case, was prohibited by the full faith and credit clause from changing or modifying the Mississippi decree provided there has been a change in circumstances inimical to the welfare of the child since the entry of the decree. What plaintiff contends is that Mrs. Maca-luso has the burden of proving the change in circumstances and that she has failed to bear that burden.
It is plain that the Mississippi custody decree of February 16, 1967 was a consent decree.
It reads in part as follows:
“It appears to the court from the pleadings on file and from the agreement reached in open court that the situation between both parties has changed since the Decree of April 18, 1967 * * *
“It appears to the court that both of the parties to this suit have comfortable homes in which to take the child and that they have agreed upon a reasonable arrangement between themselves for the child and which arrangement in the opinion of the court is to the best interest of the child.
“Therefore in accordance with said arrangement as announced to the court it is decreed * * *
“It is further agreed and approved by the court * * * ” (emphasis supplied)
There is nothing in the decree which indicates that any testimony was taken by the Mississippi Court and moreover it appears from the decree that the main concern of the Court was the physical well being of the child, it being recited therein that each of the parties had remarried and each had comfortable homes.
We quote with approval the following from the reasons for judgment dictated into the record by the Trial Judge at the close of the hearing in the case before us:
“What circumstances have been presented in the instant case, to warrant a change in the award of custody as decreed by the Mississippi Court? I think it 'is necessary that we define what is meant by circumstance. We must as it relates to questions of custody, consider the term ‘circumstance’ in its broadest form as distinguished from some materi *347 al aspect or condition. In the opinion of the Court a change in circumstance, is not restricted to the physical condition of the parent or a financial position, but is even broader in scope. It also encompasses the emotional condition of the child.
“The term ‘manifest best interest of the child’ means the obvious best interest of the physical and mental welfare of the minor * * * The manifest best interest of this child involves both its physical care and its mental makeup, and anything which adversely affects it must be considered by the Court.”
There is nothing in the record before us to indicate that the Mississippi Court had or could have had any facts before it to show the effect divided custody would have on the future emotional well being of the child. Such effect could only be shown by events subsequent to the decree. There is no evidence in the record that the unusual emotional behavior of the child, shown by the record before us, manifested itself prior to February 16, 1968. There is nothing to suggest that the child was not normal from an emotional standpoint on the date the Mississippi decree was rendered. The child is emotionally unstable now, although improving, and, as shown by the record before us, the child will experience an emotional relapse each. three months when his custody is changed. We entertain no doubt that if the facts now before us in this case were presented to the Mississippi Court that Court would vacate its divided custody decree of February 16, 1967, and grant permanent custody to one of its parents.
The Trial Judge vacated the writ of ha-beas corpus and awarded the permanent care, custody and control of the child to its mother, Mrs. Macaluso.
The Trial Judge has much discretion in awarding or changing the custody of a child whose parents are legally divorced, and his conclusions are entitled to great weight and his determinations as to custody will not be set aside unless it clearly appears that there has been an abuse of discretion or unless the judgment awarding custody has been based upon incorrect legal principles. Messner v. Messner, 240 La. 252, 122 So.2d 90; LeBlanc v. LeBlanc, La.App., 194 So.2d 122.
We concur in the finding of the Trial Judge that the welfare of the child will best be served by granting its permanent custody to its mother.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Affirmed.