MARCUS, Judge.
This is a suit in which Norman Dale Weaver, Sr. (hereinafter called “Norman”) seeks to obtain custody of his minor son Norman Dale Weaver, Jr., (hereinafter called “Dale”) from the child’s mother Donna Hicks Weaver Deer (hereinafter called “Donna”). Norman and Donna were married on December 19, 1964, and Dale was born on October 13, 1965. Shortly after the birth of the child the couple separated, and on March 5, 1966, Norman filed a suit for separation from bed and board. Donna filed a reconventional demand and was awarded a judgment of separation and custody of the minor child Dale on March 18, 1966.
On January 6, 1967, Donna filed a suit for divorce in the State of Arkansas, and a judgment of divorce was rendered in her favor on February 6, 1967.
On February 18, 1967, Donna married George H. Deer, Jr. On May 19, 1967, Norman filed a suit in Louisiana for a judgment of absolute divorce. Judgment was rendered on July 20, 1967 in his favor, but custody of the minor child Dale was awarded to the child’s mother, Donna.
Prior to her marriage to Norman, Donna had given birth out of wedlock to a son named David. Furthermore on July 17, 1967, Emily H. Deer was born of Donna’s marriage to George Deer. Donna and George Deer performed a second wedding ceremony on August 20, 1967. Norman obtained judgment disavowing his paternity of Emily on November 3, 1967.
The instant litigation was precipitated by the events of December 15, 1967. At that time Donna’s oldest child David was staying with Donna’s parents, Charles and Catherine Hicks, who in fact had virtually raised David as their own child. Donna had for some time been asking her mother Mrs. Hicks to bring David to live with her and her husband, George Deer, and Mrs. Hicks had repeatedly broken promises to deliver David to Donna. On December 15, 1967, Donna had bought a Christmas tree and planned a celebration of David’s homecoming. When Mrs. Hicks did not deliver the child as promised, Donna telephoned her mother and, in the course of the argument which ensued, Donna called her mother a “bitch” and told her she had “breathed her last.”
Mr. and Mrs. Hicks retained an attorney and told him that Donna had threatened Mrs. Hicks’ life, and that they feared for the safety of the children. Norman Dale Weaver, Sr., and his parents Mr. and Mrs. Norman A. Weaver (Dale’s grandparents) were informed of the situation, and the Hicks and the Weavers jointly filed the petition in this suit alleging that the children were in danger, neglected, and emotionally upset.
Following the filing of the petition, Mr. and Mrs. Hicks obtained an ex parte order giving them temporary custody of the child David who was already in their possession. The Weavers filed a petition in the Family Court in East Baton Rouge Parish, and the testimony adduced in that hearing was incorporated into the record of the custody proceeding in the Twentieth Judicial District Court. At the time of the Family Court proceedings, the parties agreed to place temporary custody of Dale with the Weavers pending the decision in this case.
Prior to the trial of this case, Mr. and Mrs. Hicks had a change of heart and chose to withdraw their demand for cus *84 tody of David. At the time of trial, Mr. arid Mrs. Norman A. Weaver, the grandparents of Dale, were likewise dismissed, so that the only contest before the court is that between Norman Dale Weaver, Sr., and Donna Hicks Weaver Deer for custody of Norman Dale Weaver, Jr.
After a very full and extensive hearing, the trial court held Donna entitled to retain the custody of Norman Dale Weaver, Jr. This Court, after a full review of the record, finds no error in that holding.
It is a rule well settled by the Louisiana jurisprudence on the custody of children that, particularly where the child is of tender years, the mother will he preferred unless it be demonstrated that she is unfit. Estopinal v. Estopinal, 223 La. 485, 66 So.2d 311 (1953). In any case, however, the paramount consideration will be the welfare of the child. Stevens v. Stevens, 147 So.2d 754 (La.App. 1st Cir. 1962).
It is also well established that broad discretion is vested in the trial judge and his determination of custody should not be disturbed unless manifestly erroneous. Sciortino v. Sciortino, 209 So.2d 355 (La. App. 4th Cir. 1968).
The bulk of the testimony elicited by the plaintiff is directed toward establishing Donna’s unfitness to have custody. Great emphasis was placed upon the alleged threat against Mrs. Hicks. In her testimony Mrs. Hicks explained that she did not feel that Donna intended to threaten her life, and testified that she became unduly excited by the incident because she was at that time undergoing menopause. She stated that she had since received medical treatment and had regained her health and accepted blame for the occurrence.
There was testimony suggesting that Donna was emotionally unstable, that she had once attempted suicide by slashing her wrists, and that she had been under psychiatric care.
The present significance of this testimony was lessened by the fact that the attempted suicide had occurred when she had just become pregnant with David and when the father of the child had just broken his promise to marry her. It was also while she was pregnant with David that she received psychiatric care, and she testified that she made only three visits and was told that she was not really ill and needed only more maturity. At the time of David’s birth, Donna was barely nineteen years old.
There was testimony showing that Donna had been in the care of numerous physicians for a variety of ailments over the past five years. It was apparent, however, that virtually all of this treatment had taken place during or prior to Donna’s marriage to Norman, and the evidence on this point does not indicate that Donna is presently physically or psychologically unfit to have custody of her child.
There was evidence introduced relative to Donna’s displays of temper. There was an episode of loud screaming in a Monroe hospital when Donna learned that her parents and the senior Weavers had come to Monroe to move Donna and Norman apart. On another occasion Donna kicked a hole in the wall of her apartment. She explained that this was an accident, as she had intended to kick the door instead of the wall. Norman testified that Donna had broken a glass baby bottle over his head, but Donna explained that she did this because Norman was disobeying doctor’s orders in handling the infant Dale, and because he had told her, “you can take you and your bastard and go to hell.”
There is no evidence in the record to indicate that Donna has neglected or mistreated her children. Plaintiff introduced the testimony of a pediatrician, Dr. Sterling Allbritton, who had treated Dale, but Dr. Allbritton’s testimony was that he had found nothing wrong with the child’s health.
*85 Although the petition alleged that George Deer was a source of conflict adversely affecting Dale, the testimony did not reveal that Deer had mistreated the children, but only that he had disciplined them more strictly than did the grandparents. He expressed a willingness to raise and support all three of Donna’s children. He testified that he serves as Assistant Personnel Officer with the State Department of Institutions, which indicates that he is financially able to meet the family’s needs.
Norman Dale Weaver, Sr., testified that he too has remarried and that he and his wife, who is a teacher, reside in a trailer in Denham Springs. Norman commutes to college in Hammond, and stated that, at the time of the trial of this case, he expected to graduate in one year. He was not sure whether he would still have to enter military service. The testimony of Norman and of the senior Weavers indicated that, if custody of Dale were awarded to Norman, the child would chiefly reside with his grandparents rather than with his father, at least until the latter graduates from college.
Upon careful review of the lengthy record in this case, this Court can find no substance in the claim that Donna is an unfit mother. Most of the outbursts cited as evidence of her instability occurred as a result of great duress. Most of her problems arose when she was less mature, and, except for the alleged threats against her mother, for which her mother has accepted the blame, most of the incidents were several years old. It should be further observed that Dale was only two years old at the time of the trial. Accordingly the Court is convinced, as was the trial judge, that it would be to the child’s best interest to remain with his mother. For these reasons we affirm the judgment of the trial court at appellant’s cost.
Affirmed.