308 So.2d 424 (1975)
Rudy E. SOUTHERN, Plaintiff and Appellee,
v.
Mrs. Dorothy R. SOUTHERN, Defendant and Appellant.
No. 4866.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1975.
Rehearing Denied March 12, 1975.
Writ Refused June 6, 1975.
*425 H. Ward Fontenot, Cameron, for defendant and appellant.
Jones & Jones by Glenn W. Alexander, Cameron, for plaintiff and appellee.
Before FRUGÉ, CULPEPPER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
The mother appeals a judgment dismissing her rule to change a prior child custody decree in favor of the father.
The facts show that Rudy E. Southern and Dorothy R. Southern were married in 1958. Four children, ranging in age from 5 to 13, were born during the marriage. The husband, wife and children lived together as a family in Cameron until February 21, 1974. On that Saturday night, the wife left the matrimonial domicile and moved into a motel in Cameron. Although there exists a dispute concerning which parent took the children, it is clear that the four children immediately were taken from their home across the street to the home of their maternal grandmother. The testimony reflects that the oldest boy, Richard, later returned to live with his father in the marital domicile.
The wife continued to live in the motel until April 17, when she moved to her mother's home. The children lived with the maternal grandmother until May 6, when the father took the children to live with him.
On March 1, the husband filed suit against the wife for a separation from bed and board on the grounds of abandonment. He also sought custody of the four children. Although the wife was served personally, she did not respond to her husband's suit. On March 28, a judgment by default was rendered in favor of the husband granting him a separation from bed and board and awarding him custody of the four children.
On May 7, the wife filed the present rule to change the custody. She also asked the court to award her child support for the children. On June 11, judgment on the rule was rendered rejecting all demands made by the wife. She has appealed.
The applicable legal principles have been outlined in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) and Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972). The court in Estes summarized the rules as follows:
"`(1) The paramount consideration in determining to whom custody should be granted in always the welfare of the children. * * *
"`(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. * * *
"`(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. * * *
"`(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be distrubed on review in the absence of a clear showing of abuse thereof. * * *'"
*426 The wife contends that the default judgment awarding custody to her husband was not a considered decree, there being no evidence of moral unfitness or neglect in caring for the children on her part. The husband contends that the default judgment was a considered decree for the reason that amply evidence was presented establishing the moral unfitness of the mother and her failure to care for the children.
At the hearing on the default judgment, the father and a neighbor testified. Mr. Southern testified that his wife moved into the motel in Cameron on the night of February 21; that she had not returned to live at the marital domicile; that the children lived with his wife's mother; that he stayed with the children until they went to bed at night; that his wife had not cared for the children since she left their home; that the wife went to her parents' home only once a week and stayed a short time during the day; that she spent most of her time at the motel; that he was able to care for the children with the help of his mother-in-law.
Deborah Marie Lewis, a neighbor, testified that Mrs. Southern left the family home on February 21. She also confirmed the fact that the wife had not lived with her husband since that time. Most important is her testimony that she knew the father and his mother-in-law, not Mrs. Southern, were caring for the children.
The evidence taken prior to the default judgment clearly establishes that the wife left the marital home, moved into the motel, and did not return. It is also evident that the husband, not the wife, cared for the children with the assistance of his mother-in-law. Therefore, we conclude that the default judgment awarding custody to the husband being based on ample evidence was a considered decree.
The wife also contends that the trial judge in his written reasons disregarded the paramount right of the mother to custody in favor of the so-called "double burden" test.
A reading of the reasons stated by the trial judge reveals the incorrectness of this contention:
"There are three legal principles the court has considered in the resolution of this case, and I will discuss them.
"The first principle is that, all else beingequal, the mother ought to be favored in custody questions over the father. This court is philosophically happy with this principle.
"The second is, that once custody is decreed, it ought not to be changed except on a good showing that the children would be better off. This principle also has a strong philosophical support.
"The third principle, and the most important one, is that the interest of the children is alway paramount. No one can quarrel with this principle.
"In the case now before the court, the first two of these principles clash headon. I resolve the conflict in favor of the defendant husband, because I believe that the application of the third principle requires it. I believe that at this particular time, the best interest of the children will be served by leaving them with the father."
The principles applied by the trial judge accord with the first three principles outlined in the Fulco and Estes cases. The fourth consideration applies only to appellate review. We find the trial court applied correct principles of law in deciding which parent should have custody.
Under the Estes rule for appellate review, this court must give the trial court's determination great weight and should disturb the custody award only where there is a clear abuse of the trial court's discretion.
The evidence is clear that the mother moved out of the marital home on *427 February 21 and moved into a motel in Cameron about two and one-half miles away. The record also establishes that the wife lived at the motel from February 21 until April 16th or 17th, or approximately two months.
The record establishes that the wife worked at the B & B Restaurant from 6 o'clock in the evening until 2 o'clock the next morning. After she quit working for the restaurant, Mrs. Southern went to work nights as a barmaid at the Fiesta Lounge. She claims that she only worked there three nights.
The wife stated that she became friends with a man named Lester Naquin, while living at the motel. Although she denies any illicit relationship with Naquin, she admits that he visited her motel room. Her testimony also reflects that she went riding with Naquin occasionally to look at the beach. She also admitted that Naquin had a room close to hers in the motel.
Linda Richard, the sister of Mrs. Southern, testified that she and the defendant's mother took care of the children during the time the defendant lived in the motel. She stated that Mrs. Southern would come and cook dinner for the children but did not take care of then while she worked nights.
Mrs. Southern admitted that her husband paid for their children's medical bills while they lived with her mother. She also testified that he provided $30 weekly toward the groceries for the children. She admitted that she provided no cash support for them.
The wife also attempts to show that the two older boys have begun smoking and drinking as a result of living with their father. She also claims that the oldest child, Richard, has been absent habitually from school for no apparent reason. Therefore, she contends it is not in the best interest of the children to leave them with their father.
Although Richard has been absent excessively, he is by no means a "drop-out." The record reflects that he refused to go to school despite discussions with both parents concerning his absence from school. The evidence does not reflect that Richard's absences are a result of his living with his father. Mr. Southern did not know of any of his son's unexcused absences. He left for work before Richard took the bus to school and returned after school had let out. On the occasions he attempted to determine if his son was attending school, Mr. Southern was informed by the school officials that his son was present.
Mr. Southern emphatically denied that he condoned the smoking and drinking of his two oldest children. There is evidence to show that the regressive behavior of these children was due to the break-up of the marriage. However, there is no evidence which indicates that the behavior is a direct result of their father, nor is there any evidence to support a finding that this behavior would change if the mother was granted custody.
Though reasonable minds might differ as to the children's best interest under the variant circumstances suggested by this record, we find no clear abuse of the trial court's discretion in refusing to grant a change of custody to the wife.
For the reasons assigned, the judgment is affirmed. All costs of this appeal are assessed against the defendant-appellant.
Affirmed.
DOMENGEAUX, J., concurs in the result and assigns written reasons.
DOMENGEAUX, Judge (concurring).
I concur in the result reached by the majority only because I feel bound by the restrictions of appellate review in child custody matters as set out in Fulco and Estes.
It is undisputed that when Mrs. Southern left the matrimonial domicile on February *428 21, 1974, the children were taken to her mother's home. Mrs. Southern certainly did not abandon them. Actually their care was relegated to the grandmother, presumably on a temporary basis. There are suggestions of indiscretions by Mrs. Southern, but no proof thereof; but even assuming arguendo that she was guilty of indiscretions, there is no proof that the children were exposed to same.
Our jurisprudence is replete with instances where mothers were not deprived of the custody of their children notwithstanding situations gravely more condemning than is present in this case. See for example: Fulco, cited supra in majority opinion; Fletcher v. Fletcher, 170 So.2d 144 (La.App. 2nd Cir. 1964); Estopinal v. Estopinal, 223 La. 485, 66 So.2d 311 (1953); Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Bush v. Bush, 144 So.2d 119 (La.App. 4th Cir. 1962).
I respectfully concur.