189 So.2d 75 (1966)
Weldon Wallace POOLE, Jr.
v.
Stephanie Ann ARCULEER, Wife of Weldon Wallace POOLE, Jr.
No. 6738.
Court of Appeal of Louisiana, First Circuit.
June 13, 1966.
Rehearing Denied July 8, 1966.
Writ Refused October 5, 1966.
*76 Sydney J. Parlongue, New Orleans, Fred G. Benton, Sr., of Benton & Moseley, Baton Rouge, for appellant.
Julian J. Rodrigue, of Rodrigue & Edwards, Covington, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.[*]
LOTTINGER, Judge.
This appeal is based upon a judgment rendered in connection with a suit for divorce on the grounds of adultery and for custody of two minor children.
The appellee instituted this suit against his wife alleging specific acts of adultery with co-respondent named in the petition, which acts allegedly took place at the defendant's apartment on Audubon Street in the City of New Orleans. In his petition, in addition to praying for an absolute divorce from his wife, the plaintiff prayed that he be granted custody of the two minor children born of the marriage between him and the defendant, who are both girls, 4 and 6 years of age. After a trial on the merits which lasted three days, the District Judge rendered judgment granting to the plaintiff a divorce and awarding the plaintiff the permanent care, custody and control of the two minor children, subject to certain visitation rights in favor of the mother on alternate week-ends. It is from this judgment that the defendant has taken this appeal, asking for a reversal of the District Court insofar as the granting of the divorce and the determination of custody. The plaintiff-appellee has answered the appeal asking that the visitation rights granted to the mother be reduced.
The specifications of error assigned by the appellant are that the Trial Court erred in:
1. Holding that the plaintiff's circumstantial evidence of adultery was sufficient to sustain the burden of proof;
2. In holding that merely because the defendant and her male companion were together on numerous occasions during an extended period, and had an opportunity to commit adultery by being alone, that they had in fact committed adultery;
3. In finding that because the defendant knew she was being followed by detectives and openly displayed this to the detectives, that she was irresponsible;
4. In finding that the defendant's conduct while living with her husband was in disregard of her reputation;
5. In allowing the admission of evidence by plaintiff's witnesses, over defendant's objection, to acts of adultery not alleged and not specified in either the original or supplementary petitions;
6. In basing his judgment partially on conduct which had been condoned by the plaintiff and which in fact had taken place at least two years prior to the wife's departure from the matrimonial domicile;
7. In failing to give proper weight to the fact that the various incidents, introduced as evidence by plaintiff, were isolated and infrequent;
8. In granting the permanent custody of the children to the father with no finding that the mother was morally unfit;
9. In refusing to grant the permanent custody to appellant with a concurrent award for alimony for the support and maintenance of the children;
10. In rendering judgment based on circumstantial evidence given by detectives *77 who were allowed to refresh their memory on the witness stand by testifying from notes made and written by other detectives;
11. In taking judicial notice of the neighborhood in New Orleans where the defendant resided with her two minor children.
Many of these specifications of error are repetitive and concern the same matters and therefore we believe that it would be proper to summarize the appellant's specifications of error as follows:
1. That the Trial Court erred in holding that the circumstantial evidence adduced by the plaintiff was sufficient to sustain the burden of proof relative to the appellant's acts of adultery;
2. That the Court erred in admitting evidence of the appellant's behavior prior to the time of the separation of the parties;
3. In allowing the private detectives who testified at the trial to refresh their memory on the witness stand by testifying from notes made and written by other detectives; and
4. In failing to award custody of the minor children to the appellant.
With reference to the appellant's first specification of error relative to the circumstantial nature of the evidence adduced at the trial and its alleged insufficiency to establish the fact that the defendant did in fact commit the adultery set forth in the petition, we agree that the testimony is circumstantial in nature. The Supreme Court in the case of Coston v. Coston (1941) 196 La. 1095, 200 So. 474, made the following statement:
"A `prima facie case' for divorce on the ground of adultery may be made out by showing facts or circumstances that lead fairly and necessarily to the conclusion that adultery has been committed as alleged in the petition, since in the nature of things the alleged offense can seldom be established by direct or positive evidence."
In that case, they also made the following statement:
"Adultery may be established by indirect or circumstantial evidence, as well as by direct evidence. In the nature of things, the offense can seldom be established by direct or positive evidence, and a prima facie case may be made out by showing facts or circumstances that lead fairly and necessarily to the conclusion that adultery has been committed as alleged in the petition."
The defendant was kept under surveillance by private detectives during December of 1964 through some time in March of 1965. Six private detectives testified that from January 31, 1965, the date when the person named in the petition first came to Mrs. Poole's apartment, to March 2, 1965, Mrs. Poole and this man were alone in her apartment on fourteen different occasions for many hours, and sometimes as late as 6:25 in the morning. During most of these times, there was little or no light in the apartment, and on various occasions the children were present. As stated above, on one occasion the appellant and the person mentioned in the petition were together in the appellant's apartment until 6:25 A.M., on another occasion until 6:10 A.M., and another until 5:55 A.M. On five occasions, they were together until after 3:00 A.M. and on various other occasions until well after midnight. It was testified to by the detectives, but denied by the defendant and the person who had been visiting her, that on many occasions the lights were out completely. The man who visited Mrs. Poole with this degree of regularity admitted that it was entirely possible that he had been in her apartment on some occasions past 6:00 in the morning, although he testified that he could not specifically recall the occasions.
With reference to this particular specification of error we believe that the question propounded thereby is: Does the evidence in the record justify our finding of manifest error in the Trial Court's judgment that the appellant was guilty of *78 adultery. We do not believe that any manifest error is apparent in the record in this connection.
Counsel for appellee cites and we believe the case of Morris v. Morris, 152 So. 2d 291 (La.App.1963) is quite similar in all respects with the instant case. In that case the plaintiff husband filed a suit for divorce on the grounds of adultery and asked for custody of the three minor children born of the marriage. The Trial Court rendered judgment for the plaintiff on the grounds of adultery, but awarded the custody of the children to the wife. Both parties appealed, and we stated that the questions presented were:
"In essence the present appeal presents two basic questions of fact, namely: (1) does the circumstantial evidence adduced herein establish appellee's alleged adultery so clearly and convincingly as to exclude any other reasonable hypothesis but that of her guilt; and (2) has defendant been shown by the evidence to be morally unfit or an otherwise unsuitable person to be awarded custody of her minor children? Stated otherwise, the latter question may be posed as follows: Does the record in the case at bar affirmatively show that the best interest and welfare of the minors involved will be served by depriving the mother at bar of the custody of her minor children and awarding the custody of said children to their father?"
In that case, as in the one at bar, private detectives were the only witnesses to the defendant's adultery. The times and durations of the visits made by the co-respondent to the defendant are strikingly similar to those in the instant case. There were numerous visits by the co-respondent to the defendant's apartment, usually in the evening, the defendant and the co-respondent were together in the apartment until the early morning hours, they were together in the presence of the children, and they went out together in public. All of these same statements may be made with reference to the conduct of the defendant and the co-respondent in the case at bar. Indeed, we stated in the Morris case that "appellee and Harler (the co-respondent) admitted virtually all of appellant's evidence denying only that they committed the act of intercourse itself." Mrs. Poole and the co-respondent in this case admitted the frequency with which they were together, although Mrs. Poole denied that the co-respondent had ever been in her apartment as late as 6:00 in the morning, in spite of the fact that the co-respondent admitted that it was entirely possible that they had been together in Mrs. Poole's apartment until that late in the morning. The only substantial denial they made was that they had not had intercourse and that at no time had the lights been completely extinguished in the apartment.
In upholding the Trial Judge's finding of adultery in the Morris case we said:
"In the case at bar, defendant, a married woman, knowingly kept company with a married man who was the father of three children. By appellee's own admission her paramour visited her every time he came to town; he was free to and did call upon her at her residence at any time of day or night and did in fact on more than one occasion call upon her after midnight. Appellee maintained a written correspondence with Harler and accepted a birthday and Christmas gift from him. She permitted him to take her and her children on outings and accompany her and her daughter to a school function. Although appellee denied she ever embraced Harler or permitted him to kiss her, on this score she is contradicted not only by Harler but also Overton. The record leaves little doubt but that Harler enjoyed the freedom of appellee's residence often remaining there until the early morning hours. Although Harler denied having intimate relations with appellee, he frankly admitted that his contact with her was such that at times it aroused his passion. Both appellee and Harler conceded that *79 on several occasions they were together in appellee's apartment until the early morning hours. In fact our careful reading of the record in this case reveals that appellee and Harler admitted virtually all of appellant's evidence denying only that they committed the act of intercourse itself. We believe the record herein fairly and reasonably shows, to that certainty required by law, that the opportunity and inclination to commit adultery has been established. We further believe that considering the relationship of the parties as hereinabove set forth, we can only conclude, as did our brother below, that appellee has been shown guilty of the adultery charged."
In the case at bar, the defendant, a married woman, knowingly kept company with the co-respondent. By her own admission the co-respondent visited her with great frequency in the evening hours, and as a matter of fact was free to and did on many occasions arrive at her apartment after she had left to go some other place, let himself into the premises and proceed to use and occupy her apartment as he saw fit until such time as the defendant returned. He testified that he occasionally used her apartment for purposes of studying, as she had an air-conditioner and it provided somewhat more comfortable circumstances for him in which to study. Mrs. Poole permitted the co-respondent to take her out publicly and on one occasion was observed by the private detectives to be kissing him on a public street. On at least one occasion, the defendant, in full view of the detectives who were observing her behavior, cooked supper for the co-respondent on the screen porch of her apartment in a barbecue pit. As we have stated, the defendant and the co-respondent have freely admitted their close and intimate association over the period of the time testified to by the private detectives and have only denied the fact that they committed adultery and that at any time the lights in the apartment were completely extinguished while the co-respondent was present. We believe that in this case, as in the Morris case, the record fairly and reasonably shows, to that certainty required by law, that the opportunity and inclination to commit adultery has been established. We further believe that considering the inter-relationship between the parties as hereinabove set forth, we can only conclude as did the Trial Judge, that the appellant has been shown guilty of the adultery charge.
With reference to the appellant's second specification of error, or our delineation of his specification of error, that is the error allegedly committed by the Trial Judge in admitting evidence of Mrs. Poole's behavior prior to the separation, we do not believe that the admission of that testimony was erroneous, as it was within the Trial Judge's discretion, and we suggest, even his duty to permit evidence in the record which would establish the general character of the appellant, only for purposes of making a proper determination as to custody of the children. The testimony whose admission is complained of, as can be expected, was somewhat damaging to the appellant. It disclosed that she, with some degree of regularity, visited lounges in Covington alone in the evening hours and therein indulged in the consumption of alcoholic beverages and in playing cards with groups composed primarily of men. There is testimony in the record which shows that she did visit these same places occasionally with her husband but there is also testimony that on several occasions after having been in these places with her husband, she would go home with him, and then return alone.
A portion of the testimony whose admission is complained of is from a man who was single at the time that Mr. and Mrs. Poole were living together in Covington and who resided with his brother. His testimony clearly indicates that Mrs. Poole on many occasions came to his house late in the evening to see him and although the record does not reflect that she ever entered his home, it does reflect that she *80 visited him so frequently that on some occasions he sent his brother out to tell her that he was not at home, in the hope that she would leave. Mrs. Poole admitted that she had occasionally visited this man "as a friend". The general tenor of the man's testimony was that Mrs. Poole visited him so much and so often that she became something of a bother. We believe that all of this testimony was proper and admissible in connection with the determination of custody.
The third specification of error urged by appellant is that the Court erred in permitting the private detectives to testify from notes which had been made by other detectives. Counsel for appellant cites the case of McCartan v. Filkens, 134 La. 795, 64 So. 717 (1914) in support of his contention that the testimony of the detectives who testify in divorce cases is of little or no value. We note one statement by the Court in that case which says:
"The testimony of a person employed by the husband or the wife to detect the other suspected of adultery is competent, and should not be rejected absolutely."
In further speaking of detectives, the Court went on to say:
"Their evidence being competent, and having been corroborated in almost all particulars, is entitled to consideration and weight in determining the case. * * *"
More recently, in Morris v. Morris, supra, and in Portman v. Portman, 181 So.2d 429 (La.App.1965), we and the Second Circuit have granted divorces on the grounds of adultery based on the testimony of private detectives.
In the Portman case, supra, it was urged by counsel for defendant that the testimony of private detectives, while admissible, must be corroborated. In connection with that contention, the Second Circuit said:
"Conceding the correctness of this general rule, it must be pointed out that the necessary corroboration can be, and frequently is, established by the facts and circumstances and is not dependent for its validity upon the testimony of other witnesses. Our examination of the jurisprudence on this point does not disclose any case in which the testimony of private investigators has been rejected except in those cases where such testimony was lacking in actual probative value. It is pertinent to observe that acts of adultery are not customarily performed in such places and under such conditions and circumstances as would admit of eye witness evidence of the sexual act. For this reason, courts must rely upon the proof of facts and circumstances which justify a reasonable conclusion as to the performance of the reprobated act; Baasen v. Baasen (La.App.2d Cir., 1961), 133 So.2d 908 and authorities cited; Bosch v. Bosch (La.App. 4th Cir., 1962), 143 So.2d 284; and Antony v. Antony (La.App. 3rd Cir., 1964), 160 So.2d 765."
In the instant case, as we have observed previously, the testimony of the defendant and the co-respondent corroborated the testimony of the detectives, except that they specifically denied that they were together with the lights out and that they committed adultery, with the additional denial by the defendant that she had ever been together with the co-respondent until after five in the morning. We think that the testimony of the private detectives has been amply corroborated by the defendant and the co-respondent.
With reference to the use by the detectives in connection with that testimony of notes, the record discloses that the detectives, usually working in teams, made notes, and after going off duty for the day, together if they worked together, took their notes and one or the other of those who worked that night prepared the report. Thereafter, both detectives signed the report and all of the detectives who testified, testified that they read the reports before they signed them and would *81 not have signed them unless the reports correctly reflected their notes. This procedure in connection with the making of notes and preparation and signing of reports were testified to by all of the detectives who had the defendant and the corespondent under surveillance. This was not a situation in which only one man made notes and then prepared the reports, with the second man having to rely on the notes made by the first man. Each of them made their own notes independently and consulted the notes in examining the report before they signed it. We would view the testimony of the detectives with some skepticism if the record reflected that each of them had testified at length about extensive dates, times of departure, times of arrival, etc., without having available the reports which were made in connection with their surveillance. These detectives testified that they were employed by a large private detective agency, and that they worked on many, many different matters in connection with their operation. It would have been a virtual impossibility for anyone to have accurately recalled specifically all of the dates, times and persons connected with this matter over the entire period of the surveillance without the assistance and availability of reports made by them on a daily basis. Their testimony appears to be in all respects completely candid and straightforward.
Let us now deal with the fourth and final major assignment of error by the appellant, to the effect that the Trial Judge erred in granting the custody of the minor children born of the marriage to the plaintiff. In the case of Kieffer v. Heriard, 221 La. 151, 58 So.2d 836, the Supreme Court enunciated the following:
"(3,4) Under the provisions of Article 157 of the Civil Code and the jurisprudence of this court, the custody of a child whose parents have been legally divorced is left largely to the discretion of the trial judge under circumstances shown to exist when he is called upon to act. This discretion is not, however, unlimited but is subject to review and control by this court. Nevertheless, this court is reluctant to upset a judgment of the trial court in matters involving the custody of a child and will not do so except in cases where it is shown that the judge has abused the discretion vested in him. See Black v. Black, 205 La. 861, 18 So.2d 321; Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456.
(5,6) It is also well established that the paramount consideration in determining to whom the custody of a child should be given after the divorce is the welfare and the best interest of the child, and under this rule this court has consistently awarded the custody of minor children to the mother unless she has been found to be morally unfit or unless she is incapable of taking care of the children. See Black v. Black, supra; White v. Broussard, 206 La. 25, 18 So.2d 641; Withrow v. Withrow, 212 La. 427, 31 So.2d 849; Sampognaro v. Sampognaro, supra."
In Estopinal v. Estopinal, 223 La. 485, 66 So.2d 311, the Supreme Court, in affirming a judgment of the Trial Court, established the proposition that a single act of adultery on the part of the mother, with no showing that the mother was morally unfit to provide for the child's welfare, was not, per se, sufficient to deprive the mother of the custody of the child. In the cases of Salley v. Salley, 238 La. 691, 116 So.2d 296 and Byrd v. Byrd, La.App., 128 So.2d 794, the Courts of this State have granted custody to the father where the evidence established that the mother was morally and otherwise unfit because she had lived in open adultery for various periods of time while the children were in her care and custody.
We come again to the case of Morris v. Morris, supra, in which the Trial Court, while granting to the husband the divorce on the grounds of adultery, awarded custody *82 of the child to the mother. In overruling the Trial Judge's award of custody, we stated:
"We shall next consider the question of custody. While it is quite true that Article 157, LSA-R, C.C. expressly provides custody of minors shall be awarded to the spouse obtaining the separation or divorce, it does not follow, as argued by learned counsel for appellant, that the jurisprudential rule that the mother is preferred in custody matters unless shown to be morally unfit, is in conflict with the aforesaid codal authority. We concede the well established principle of law that with respect to the custody of children, (especially those of tender years), the mother is preferred unless shown to be morally unfit or otherwise unsuitable. Ard v. Ard, 210 La. 869, 28 So.2d 461; Guillory v. Guillory, 221 La. 374, 59 So.2d 424; Hathorn v. Hathorn, 237 La. 554, 111 So.2d 770. The rationale of the rule has been so often stated no practical purpose would be served by our reiterating it herein. The hereinabove cited authorities likewise establish the rule that the preference given the mother in such matters is subject to the exception and rule that in custody cases the paramount concern of the court is the best interest and welfare of the children concerned. Accordingly, it has been held on more than one occasion that even though there may be no proof of moral unfitness, a mother will be denied custody of children of a marriage in the event it appears she either cannot or does not provide a proper and wholesome homelife and atmosphere in which to rear the children. Matheny v. Matheny, 205 La. 869, 18 So.2d 324; State ex rel. Magliore v. Saragusa, 229 La. 967, 87 So.2d 309, Hathorn v. Hathorn, 237 La. 554, 111 So.2d 770. * * *
In the case at bar the record reflects that after leaving the matrimonial domicile appellee though married and the mother of three children openly and publicly embarked upon a course of repeated indiscretions in total defiance and disregard of moral principles including her deliberate and willful involvement with a man known to her to be married. The illicit relationship thus established and continued for a period of months was such that appellee's paramour was free to call at her home any hour of the day or night, irrespective of whether appellee's children, ages approximately 12, 10 and 5 at the time, were present. Apparently Harler enjoyed the freedom of appellee's home virtually to the extent he were her husband. On at least two occasions he assumed the role of husband and father by taking appellee and the children on outings or school functions. Neither appellee nor Harler denied that they frequently drank in the presence of the children and Harler conceded that on at least one occasion he kissed appellee in the presence of the children. Appellee herein made not the slightest effort to conceal the illicit affair from her children but on the contrary, repeatedly received and entertained Harler in their presence. It is fair to assume that the children, especially the boys, must indeed have wondered concerning the relationship between their mother and her frequent visitor. Appellee willingly accompanied Harler dining and dancing in public places on numerous occasions, after returning to her home with him late at night where he remained until all hours of the morning. Such utter disregard for the rules of propriety and decorum can but have an ill effect on the children involved. It is obvious to us that such an atmosphere is not conductive to the best interest and welfare of the children. Appellee herein was not guilty of a single indiscretion but of a calculated course of misconduct extending over such a period and of such open and public nature as to render her unsuitable as a custodian of her children. Byrd v. Byrd, La.App., 128 So.2d 794; Salley v. Salley, 238 La. 691, 116 So.2d 296."
*83 In the case at bar, the record reflects that after leaving the matrimonial domicile the appellant, although married and the mother of two children, openly and publicly, and with full knowledge that her actions were probably being observed by private detectives who had been hired by her husband, also embarked upon the course of repeated indiscretions in total defiance and disregard of moral principles. While the private detectives employed by the appellee only observed the behavior of the appellant with the co-respondent for a period slightly in excess of one month, the appellant and the co-respondent both admitted at the time of the trial that he had been in her apartment even after the period of surveillance stopped. While the period of the illicit relationship in this case between the appellant and the co-respondent did not cover the extended period of time that the relationship covered in the Morris case, we nevertheless feel that the principles involved are precisely the same. The co-respondent enjoyed the freedom of the appellee's home just as did the co-respondent in the Morris case. The record reflects that on many of the visits made by the co-respondent to the appellant's apartment, the children were present. The appellant here, as in the Morris case, willingly accompanied the co-respondent to public places on numerous occasions, dining and dancing, and returned to her home with him late at night where he remained until the early hours of the morning.
With reference to the appellant's behavior, the Trial Judge, in his written reasons for judgment made the following observations:
"On the trial of the case, Mrs. Poole characterized her course of conduct as indiscreet. In the opinion of the Court, it was irresponsible, she had been warned by counsel for plaintiff in this case that she would probably be followed by private detectives. She testified that she was aware of this fact. In the face of it, and in the face of the fact that she was charged with the responsibility of bringing up two small girls, she persisted in a course of conduct which utterly disregarded the proprieties dictated by our society. Her conduct over the past few years, even while living with her husband, has been such as to indicate a total disregard for her own reputation, as well as that of her family."
In his answer to the appeal, the appellee complained of that portion of the judgment below which granted to his wife visitation rights with her two minor children on alternate week-ends, commencing at five o'clock P.M. on Friday afternoon and ending at five o'clock P.M. on Sunday afternoon, which visitation privileges, according to the judgment were to commence on Friday, September 10, 1965. According to the judgment, the appellee's wife was to exercise these visitation privileges by calling for and receiving the children at the appellee's residence in Covington, at the hour of five o'clock P.M. and taking the children with her to New Orleans, Louisiana, where they were to remain for the week-end, with her returning the children to their father's residence in Covington, Louisiana, no later than five o'clock P.M. on the following Sunday. The appellee contends that these visitation privileges amount to a split custody of the children, which he alleges would be detrimental to the welfare of the children.
In connection with the rule for alimony in custody pendente lite which was tried prior to the trial of this case on the merits, the District Court awarded custody of the two minor children to Mrs. Poole, and accorded the husband the identical visitation in that judgment as were accorded Mrs. Poole in the final judgment. Under the terms of the judgment rendered in connection with the rule, Mr. Poole picked up the children in New Orleans at Mrs. Poole's residence at five o'clock on alternate Friday afternoons, took them to his home in Covington and returned them to Mrs. Poole's residence in New Orleans no later than five o'clock P.M. on the following Sunday.
*84 The record does not reflect that this visitation arrangement was in any way detrimental to the welfare of the children. At this time, we see nothing in the reverse of that arrangement which would be detrimental to the welfare of the two children. Should it develop in the future that this arrangement does in some manner operate to the detriment of the children then certainly the arrangement can be modified by the District Court. It is well settled in our jurisprudence that a determination of custody with its incident rights of visitation is never closed, but is always subject to change should prevailing conditions warrant a change. Accordingly, we see no justification for disturbance of the visitation privileges accorded Mrs. Poole by the Trial Judge. We therefore find no error in the Trial Court's award of custody of the minor children to the appellee and its determination of visitation privileges to be accorded to the appellant.
Accordingly, the judgment of the Trial Court is affirmed, with the appellant to pay all costs of this appeal.
Judgment affirmed.
NOTES
[*] Due to the death of ELLIS, J., prior to rendition, this opinion is unanimously rendered by LOTTINGER, LANDRY, REID and BAILES, JJ.