220 So.2d 790 (1969)
David Alan MURRAY
v.
Veronica Fannaly MURRAY.
No. 7609.
Court of Appeal of Louisiana, First Circuit.
March 10, 1969.
Rehearing Denied April 14, 1969.
*791 Iddo Pittman, Jr., of Pittman & Matheny, Hammond, for appellant.
Ronald A. Curet, Hammond, for appellee.
Before LANDRY, SARTAIN and MARCUS, JJ.
LANDRY, Judge.
Plaintiff David Alan Murray takes this appeal from the judgment of the trial court awarding permanent care and custody of his three year old daughter, Deborah Frances Murray ("Debbie"), to the child's mother, Veronica Fannaly Murray, defendant, incident to an action in which plaintiff obtained a divorce from his former spouse on grounds of adultery. We find that the lower court erred in awarding custody of the child to defendant.
On October 28, 1966, appellant obtained a judgment of separation a mensa et thoro from defendant, at which time custody of the child was granted to the mother. Subsequently, plaintiff filed suit against defendant for a final divorce on the ground of adultery. Pursuant to trial of said action, judgment of final divorce was rendered in favor of plaintiff-appellant on February 28, 1968, upon the lower court finding defendant guilty of the alleged adultery. In this same decree, permanent care, custody and control of the child was awarded defendant with reasonable visiting privileges reserved to plaintiff. Pursuant to motion by plaintiff, a new trial was granted on the question of custody alone. Rehearing of said issue resulted in judgment rendered April 16, 1968, reinstating custody in defendant.
There is practically no dispute as to the salient facts upon which the instant decision rests. Following the separation from bed and board obtained by appellant in October, 1966, defendant and her infant daughter moved from the marital domicile in Hammond, Louisiana, to Ponchatoula, Louisiana, and lived with defendant's parents. In August, 1967, defendant and the child commenced residence in Apartment 327-A Tudor Street, Harahan, Louisiana, where defendant began an illicit relationship with one Thomas Williams, III, a permanent resident of said address. Defendant, Williams and the child were still living at the mentioned address as a family on the date judgment was rendered on rehearing of the question of custody. At the hearing of February 23, 1968, defendant frankly conceded she was pregnant by Williams when she left her parents' home in August, 1967. Both defendant and Williams conceded at the February 23, 1968, hearing that defendant was in her eighth month of pregnancy. Said parties readily acknowledged their unlawful relationship *792 and stated their mutual intention to wed once the divorce between plaintiff and defendant became final. It further appears that prior to February 23, 1968, defendant and Williams had made application in an adjoining state for a marriage license which they would secure when defendant was legally free to remarry. Debbie has remained with her mother during the entirety of the latter's residence with Williams.
Defendant testified Debbie is aware plaintiff is her real father. Defendant further admits the relationship of parent and child has been fostered between Debbie and Williams to the point defendant has instructed the child to call Williams "Daddy". In addition, defendant acknowledges the child is aware defendant and Williams live together as man and wife and that there is soon to be an addition to the "family".
The lower court concluded, largely upon a report of the Child Welfare Division, Department of Public Welfare, State of Louisiana, ordered by the trial court, that while defendant's actions were not to be condoned, nevertheless the welfare of the child would best be served by permitting custody in the mother. It appears that basically the report recommended custody be awarded the mother because the physical needs of the child were being properly attended to and also because of the fear of certain emotional problems which are likely to attend separation of daughter and mother at that particular stage in the child's life.
Plaintiff contends, and adequately established, that he is both willing and able to provide a proper home for the child. In this regard it appears the child, if awarded to plaintiff, would reside with plaintiff in the home of plaintiff's parents and be cared for by the paternal grandmother who is in her fifties, in good health and available to take care of the child on a full time basis. If custody remains in the mother who works, the child would be attended daily by a "sitter" during normal working hours. Plaintiff urges that if granted custody, he would see that the child is afforded proper religious and moral training and example as opposed to her living in the midst of an immoral and illicit relationship.
As enunciated on countless prior occasions, the sole criteria in these instances is the best interest of the child or children concerned. See Kieffer v. Heriard, 221 La. 151, 58 So.2d 836, and authorities therein cited.
The rules determinative of the case at bar are succinctly stated in the Kieffer case, supra, as follows:
"It is also well established that the paramount consideration in determining to whom the custody of a child should be given after the divorce is the welfare and the best interest of the child, and under this rule this court had consistently awarded the custody of minor children to the mother unless she has been found to be morally unfit or unless she is incapable of taking care of the children. See Black v. Black, supra [205 La. 861, 18 So.2d 321]; White v. Broussard, 206 La. 25, 18 So.2d 641; Withrow v. Withrow, 212 La. 427, 31 So.2d 849; Sampognaro v. Sampognaro, supra [215 La. 631, 41 So.2d 456]."
While we are fully in accord with the proposition that it is usually in the best interest of a child, especially one of tender years, that custody be granted the mother, we are also aware of numerous instances wherein the father has been awarded custody because of action on the part of the mother rendering her morally unfit. Salley v. Salley, 238 La. 691, 116 So.2d 296 (1959); Eiswirth v. Eiswirth, 195 So.2d 307 (La.App. 4th Cir. 1967); Poole v. Poole, 189 So.2d 75 (La.App. 1st Cir. 1966); Byrd v. Byrd, 128 So.2d 794 (La. App. 3rd Cir. 1961).
Appellant herein strenuously objected to the trial court considering and *793 admitting into evidence a report compiled by the State Department of Public Welfare and the testimony of Mr. Michael Savario, a case worker employed by said department, who testified concerning portions of the report on which he made no investigation. Appellant maintains opportunity should have been afforded for cross-examination of each person who contributed to the report or expressed any opinion predicated thereon. In this latter regard, appellant argues that the testimony of Mr. Savario should have been restricted to those aspects of the report concerning which he had personal knowledge. It appears appellant's arguments in the above respects are well taken. Lyckburg v. Lyckburg, 140 So.2d 487 (La.App.); LeBlanc v. LeBlanc, 194 So.2d 122 (La.App.); 23 Louisiana Law Review 255.
While Mr. Savario testified he agreed with the recommendations contained in the report, he conceded he had no connection with certain portions of the investigation, primarily the inquiries conducted by the Department's Orleans and Jefferson Parish offices. Further Mr. Savario conceded the department employee who signed the report took no part in the investigation but relied upon information supplied by the several investigators involved:
As was said in the LeBlanc case, supra:
"In spite of the fact that reports of this type have been received and considered by courts from time to time, we agree with defendant in this case that the confidential report which was submitted by an investigator for the Juvenile Department should not have been considered as evidence by the trial court, without first permitting the defendant to see the report, to be confronted by the investigator and to cross-examine him."
We find, therefore, the trial court erred in admitting the report in evidence because much therein was predicated on hearsay and the parties furnishing the information were not available for cross-examination.
We find further the reliance placed thereon by the trial court was not warranted inasmuch as the report was found by appellant's witness, Dr. Ann Cowardin, child psychiatrist, to be of minimal value in determining what is best for the child concerned. Dr. Cowardin stated she studied the report and found that whereas it contained accurate statements regarding the general field of child psychology, nevertheless it was of no real significance due to the aggravated circumstances attending this particular case. In reply to her evaluation of the report, she replied as follows:
"A. I would say that the statements in this final paragraph are accurate descriptions of the general child psychology so to speak. The only difficulty is they don't answer the question of what is now best for this particular child's future mental health, in view of the fact that she is not in an ordinary situation. In an ordinary situation this is true, mother and daddy are in the home, father goes out to work eight hours a day, and mother stays home and takes care of the child. Obviously when there is a separation and divorce the ordinary situation does not hold and then you are up against having some concrete evidence on which to base a judgment as to what is best for the child's future mental health. I think this is a good report and it is done well for the purpose of social summaries. It would be very useful to a doctor as background information, but it does not contain the essential elements to make a judgment as to what is best. I simply don't know. I was not allowed to see the child."
And in response to the following question, she answered:
"Q. That you therefore can not say that this report is wrong in any manner?
A. No, I am not saying the report is wrong, but that it doesn't apply. The *794 evidence that it contains is not evidence to tell anyone what is best for the child's future mental health. It is an accurate description of the social setting and would be very useful to me. If the mother would have come to me with this child this would have been a useful report to get background information, but it would not be the thing on which I would base my decision as to what would be best for the child."
As pointed out by counsel for defendant, it is established law that occasional or infrequent acts of adultery are insufficient to declare a mother morally unfit to rear her child. Estopinal v. Estopinal, 223 La. 485, 66 So.2d 311; Lovell v. Lovell, 205 So.2d 470 (La.App.). It appears the trial court relied heavily upon Lovell v. Lovell, supra, which we find readily distinguishable from the case at bar. In Lovell the mother was awarded custody despite having committed adultery on several occasions. It is to be noted also that in Lovell the mother was not living in open concubinage. Another factor which undoubtedly influenced the judgment of the Court in Lovell was that the father was stationed overseas in the United States Air Force.
In Wade v. Wade, 129 So.2d 571 (La. App.), under circumstances similar to those presently before us, custody was granted the mother at least in part because the father had at one time abandoned the child. No such circumstance exists in the case at hand. Here the father has exerted every effort to maintain contact with the child, has constantly striven to attend his daughter's needs and is most desirous of providing the child a wholesome home environment. It is abundantly clear from the record that defendant has been totally unconcerned and unaffected by her immoral relationship and the adverse social implications stemming therefrom.
It is the duty of the court to promote and protect the best interest and welfare of the child in cases of this nature. To serve the best interest of the child, it is absolutely essential that the party having custody do more than merely satisfy the need for proper food, clothing and shelter. It is indispensable to a child's welfare that he be taught both by word and example the principles of decency and commonly acceptable moral principles. Defendant having demonstrated her total disregard of moral principles and her determination to rear her child under such circumstances irrespective of the subsequent effect upon the child, has, in our view, forfeited her right to custody. We note numerous instances wherein, because of the mother's frequent open adultery or living in concubinage in the same house with the child, custody has been awarded the father. See for example Salley v. Salley, 238 La. 691, 116 So.2d 296; Poole v. Poole, 189 So.2d 75 (La.App.); Byrd v. Byrd, 128 So.2d 794 (La.App.).
It is too well established to require citation of authority that much discretion is vested in the trial court in cases of this nature and that a custody determination will not be set aside upon review unless it appears there has been an abuse thereof. We find such error in the case at hand.
We deem it advisable to reserve appellee's right to apply to the trial court for a decree establishing her visitation privileges.
Accordingly, the judgment of the trial court is hereby annulled, reversed and set aside and judgment rendered herein in favor of plaintiff David Alan Murray and against defendant Veronica Fannaly Murray granting and awarding plaintiff permanent care, custody and control of the minor, Deborah Frances Murray.
It is further ordered, adjudged and decreed that the right is reserved defendant to apply to the trial court for a decree fixing her visitation rights and privileges.
Reversed and rendered.