MILLER, Judge.
Defendant mother, Mary Cobb Calvert, appeals the judgment granting custody of her three minor children to her former husband, plaintiff J. Minos Simon, father of the children. We affirm.
On November 4, 1970, judgment was signed awarding custody of the children to the mother. On March 23, 1971, the father filed a rule seeking custody of the children. He contended that the mother was an unfit person because of her excessive drinking, that she entrusted the care of the minor children to an eighteen year old son of a previous marriage who was unfit to care for the children, and because she allowed male visitors to her home at different hours of the night under circumstances that were detrimental to the welfare of the children. The father engaged the services of several persons to keep the mother under surveillance for the purpose of obtaining evidence to support his contentions.
At the trial of that rule the court was not impressed with the testimony of the investigators engaged by the father. They produced no evidence tending to show that the mother had committed adultery, and much evidence of these investigators showing that the mother was away from home was explained by the fact that her employment occasionally required her absence from home. Judgment thus was rendered by the trial court continuing child custody in the mother. The court was of the opinion, however, that the mother’s eighteen year old son did not provide proper supervision for the children, and the judgment conditioned her continued custody upon her providing competent help when she was away from home.
On November 15, 1972, the father filed this rule seeking custody of the three minor children of the marriage. He again contends that the mother is morally unfit; that she does not maintain a wholesome home environment, and otherwise neglects the children; that she is engaged in the business of prostitution; that she is employed as a barmaid; and that the mother has engaged in adulterous relationships with men.
*610 The trial judge found that the mother had not engaged in prostitution, and that she had not engaged in sexual relations with anyone other than one man with whom she had discussed matrimony. The court concluded, however, that the children were not being reared in a wholesome homelike atmosphere, and judgment was rendered on February 27, 1973, removing custody from the mother and awarding it to the father. The mother appealed, and it is that appeal which is now before us.
The mother contends that the trial judge erred in holding (1) that the welfare of the children was not best served by allowing them to remain in her custody; (2) that the father is capable of providing a better environment for the children; and (3) that the award of custody should be changed from the mother to the father.
The paramount consideration in determining to whom custody should be granted is always the welfare of the children. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971).
This court gives great weight to the trial court’s considered determination of custody. The scope of review in child custody actions is:
If the trial court decides which parent should best have custody for the children’s sake after it has applied correct principles of law, a reviewing court should disturb such custody determination only where there is a clear abuse of the trial court’s discretion in the matter, even though reasonable minds might differ as to the children’s best interest under the variant circumstances suggested by a particular record. Estes v. Estes, 261 La. 20, 258 So.2d 857, 860 (1972).
(1)
Mother’s custody is detrimental to children.
The major issue contains many sub-issues, each of which the trial court specifically addressed. These sub-issues are: whether the mother engaged in the business of prostitution; whether the mother engaged in adulterous relationships with men; and whether the mother provides a wholesome home environment for the children.
To support the position that the mother engaged in the business of prostitution, the father produced three witnesses who testified that they had paid the mother to engage in sexual intercourse with them. Additionally, the father introduced photographs allegedly depicting each of these witnesses with a woman they say was the mother. One photograph was introduced which depicts one of these witnesses and a woman he says was the mother engaged in the act of sexual intercourse. Additionally, other persons engaged by the father to maintain surveillance of the mother testified as to her immoral actions. The trial judge in rejecting the testimony of investigators engaged by the father’s employee and in holding that the mother did not engage in prostitution, stated:
. the court is of the opinion that the entire story of the practice of prostitution by Mrs. Calvert was staged by someone. ... I believe it is sufficient to say that the testimony and evidence is unworthy of belief.
The evidence supports this conclusion. During trial, the man who allegedly took the photographs of the mother with these witnesses could not successfully operate the camera which he testified he used to take the photographs. In an effort to clear up the issue created by the allegedly “staged” evidence, the mother volunteered to submit herself to a polygraph test, and to stipulate that the results thereof would be admitted into evidence. The father rejected the offer, indicating shock that appellant would engage in such “theatrics”.
By her own admission, the mother has been carrying on an adulterous relationship with a man named John Burnham. The mother is not divorced from her current husband Mr. Calvert, nor has she taken *611 steps to obtain a divorce. She testified that she was waiting until she had been separated for two years before filing for the divorce. She testified that she and Burnham have discussed matrimony. Her witness Burnham testified that they had engaged in sexual intercourse on at least eight occasions, two of these being after the rule was filed in this case. He testified that all these liaisons occurred in his Texas home, and that the mother never engaged in sexual relations in her home.
The trial judge applied the following principles of law to the issue of .the adulterous relationship:
Proof of one act of adultery or even of several acts with the same paramour does not necessarily render morally unfit a mother who is otherwise suited for custody. While one or several acts of adultery on the part of the mother may not in itself or themselves render her morally unfit to care for the children, such adultery is one of the elements to be considered in making the award. It is not only the acts of adultery committed in the presence of the children which renders a mother unfit for custody but on the contrary, proof of moral unfitness by acts of adultery committed outside the presence of the children is the general rule.
Except for that portion shown in italics, the trial judge quoted directly from Strother v. Strother, 248 So.2d 867, 870 (La.App. 3 Cir. 1971).
Appellant contends that the Louisiana caselaw distinguishes between “occasional and infrequent acts of adultery” and “living in open concubinage,” saying that a mother should not be deprived of child custody unless “open concubinage” is shown, citing Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Brunt v. Brunt, 166 So. 2d 71 (La.App. 3 Cir. 1964) ; Strother v. Strother, 248 So.2d 867 (La.App. 3 Cir. 1971); and Murray v. Murray, 220 So.2d 790 (La.App. 1 Cir. 1969). This argument might be well founded had the trial judge based his decision exclusively on the issue of the adulterous relationship, but this was not the case. The trial judge stated that the issue of adultery is one of the elements to be considered in determining which parent is to be awarded custody.
We hold that the trial judge applied the following correct principles of law.
To serve the best interest of the child, it is absolutely essential that the party having custody do more than merely satisfy the need for proper food, clothing and shelter. It is indispensable to a child’s welfare that he be taught by word and example the principles of decency and commonly acceptable moral principles. Murray v. Murray, 220 So.2d 790, 794 (La.App. 1 Cir. 1969).
(The mother’s preference in child custody is) subject to the exception that a mother will be denied custody of the children of a marriage even though there may be no proof of moral unfitness where it appears that she either cannot or does not provide a proper and wholesome homelike atmosphere in which to rear the children. Jackson v. Jackson, 217 So.2d 223, 226 (La.App. 2 Cir. 1968).
Relevant here is the fact that the trial judge in a previous custody determination maintained custody to the mother, but conditioned the decree upon her providing competent help when she was away from home.
During the period from January, 1972, until this rule was filed on November 15, 1972, the mother had several babysitters who would stay with the children in her home until at least 3:00 a. m. when the mother would return from work. The first babysitter worked off and on between January and June of 1972, two or three nights each week. This babysitter was a fourteen year old next door neighbor. The *612 mother then hired a lady without checking her references. Another babysitter during this period was an ex-convict. Although, there is a dispute in the testimony as to whether the mother hired her at the request of another babysitter, it was established that this ex-convict was paid to babysit in the mother’s home on several occasions. The court found that the ex-convict “was sent to Mrs. Calvert by someone and that her employment was not per chance.” It was nevertheless established that the mother did not investigate the background of her babysitters as she had been admonished to do following a prior custody removal hearing.
The trial judge did not abuse his discretion in holding that the mother disregarded the court’s previous instructions by not providing proper supervision for her children during her absence.
Another element which the trial judge considered in making his determination of the custody award was that the mother’s work prevented her from being with her children except for the short period between the time they arrived home from school and 6:30 p. m. when she departed for work each day.
Appellant contends that the trial judge erred in his determination that this night work was detrimental to the children, because he failed to take into consideration the testimony that she resigned this employment early in December, 1972. Evidence in this record relating to a later hearing established that she is currently employed as manager of a luxury apartment house in Shreveport. Appellant cites Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), for the proposition that a custody determination does not have as its purpose the punishment of “past misconduct,” but to serve the welfare and best interests of the children. In Fulco, supra, the past misconduct of the mother was open and public adultery which appellant contends is far more serious than working late hours as a barmaid. In Fulco, supra, the court reinstated child custody in the mother stating:
There is no showing that the mother was not providing a good and moral home for them at the time of custody hearing below, .... (Emphasis added.) Fulco v. Fulco, 259 La. 1122, 254 So.2d 603, 606 (1971).
In the present case the custody hearing began November 29, 1972, and the mother did not terminate her employment as a barmaid until December 6, 1972, or more than one week after the hearing began. Additionally, the mother had adulterous relations with Mr. Burnham at least once at his home after the hearing began. We find no manifest error in the holding that at the time of the custody hearing, the mother was not providing a good and moral home for her children. Another ground for distinguishing Fulco is that there was no showing in Fulco that the mother had violated court instructions rendered following a previous custody hearing.
The trial judge considered several elements in his determination that the mother did not provide a wholesome homelike atmosphere for the children. The elements which, he considered were : her admitted adulterous relations which continued during the trial; her obtaining employment as a barmaid which necessarily prevented her from being with her children for more than a few hours each day; her failure to investigate the background of persons employed to babysit her children; her employing a fourteen year old girl to stay with the children at late night hours while she worked; ' and her disregard for the court’s instructions that she provide competent supervision for her children in her absence. The trial judge did not abuse his discretion in removing custody from the mother.
*613 (2)
Father’s custody provides a proper home environment
The trial judge disposed of this issue in a single sentence, stating:
the evidence substantiates the contention of Mr. Simon that he is in a position to furnish a proper home for the children.
The evidence substantiates the advantages furnished the children when they are living with the father. The children travel within and outside Louisiana, are taught the social graces, attend summer camps, and are subjected to a more cultural environment. The present Mrs. Simon has taken university courses in child development and has experience as a kindergarten teacher. Both the father and his present wife assist the children with their studies after school.
Appellant’s primary contention is that the father should have known about the “staged” evidence and that this casts doubt upon his ability to exercise the mature judgment, wisdom, and perspicacity required of one charged with the obligation to teach children by word and example the principles of decency and commonly accepted moral values.
We agree that the father should have known that some of the evidence was staged. His own employee and chief investigator was in charge of the surveillance, which was conducted by several persons. An inference must be drawn from the fact that this investigator, who could shed light on the issue of “staged” evidence, was called as a witness by the father on rebuttal only, and the father refused to allow appellant to cross-examine him beyond the scope of the limited rebuttal.
Nevertheless, we find no manifest error in the trial court’s decision to award custody to the father.
(3)
The trial judge did not abuse his discretion
Upon appellate review the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interest of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972); Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Malone v. Malone, 271 So.2d 598 (La.App. 1 Cir. 1972); Nugent v. Nugent, 232 So.2d 521 (La.App. 3 Cir. 1970).
The trial judge applied the correct principles of law in this case. He sat through the hearing which produced a nine volume record plus extensive exhibits and assigned well supported written reasons for his conclusions.
The trial court judgment is affirmed at appellant’s costs.
Affirmed.
DOMENGEAUX, J., concurs in result and assigns written reasons.