DIXON, Justice.
This is a rule to change child custody from the mother to the father of three minor children, a daughter who is now fifteen, a son who is now twelve and another sone who is nine years of age.
The trial court rendered judgment for the plaintiff father, awarding him the custody of the children. The Court of Appeal affirmed (300 So.2d 608). We granted writs because of an apparent inconsistency in the reasons for judgment in both courts below.
The basis for the rule for change of custody was a claim of moral depravity against the mother. It was alleged that she worked as a barmaid, was guilty of sexual promiscuity and was engaged in prostitution.
The trial court concluded that the evidence of prostitution was “unworthy of belief” and that the “entire story of the practice of prostitution by Mrs. Calvert was staged by someone.” Then, “discarding the staged evidence,” the trial judge nevertheless removed the custody of the children from the defendant mother and awarded it to the father, apparently finding the mother, although capable of providing a good home for the children, failed to do so, and did not provide a proper “wholesome homelike atmosphere” for them. There was an admitted adulterous relationship between Mrs. Calvert (who was living apart from Calvert, but not legally separated or divorced) and a man named Burnham.
The Court of Appeal affirmed, finding that the trial judge had not abused his discretion in removing custody from the mother, and finding no “manifest error” in the trial judge’s awarding custody to the father, in spite of the Court of Appeal conclusion that the “father should have known that some of the evidence was staged.”
Because of what appeared to be an exaggerated deference to the “manifest error” doctrine, and an over-emphasis on the rule that the finding of the trial judge in custody cases is entitled to great weight, and because it appeared that the children were taken from a mother whose principal guilt had been found to be a sexual liaison with an unmarried man, and because it appeared that the custody of the children was awarded to the lawyer-father who represented himself (along with two other lawyers associated with him) and who surely must have been charged with knowledge of “staged evidence,” we were concerned that the children had been removed from the custody of the mother and awarded to a father who might have been guilty of staging evidence, making unfounded charges of adultery against the mother of his children, and burdening the court with evidence which was unworthy of belief.
An examination of the nine volumes of evidence in the record does not support our apprehension. The record does not support the charge made on behalf of Mrs. Calvert that the lawyer-father violated standards of professional responsibility and ordinary morality in knowingly participating in the presentation of evidence which he knew or should have known to be false. We affirm the judgments of the courts below.
-Mrs. Calvert, the former Mrs. Simon, was awarded custody of these children in November of 1970. Mr. Simon brought a *286 rule for change of custody in March of 1971, contending that the mother was unfit. There was judgment in favor of the mother, conditioned upon her providing competent supervision for the children when she was absent from home. The instant rule for change of custody was filed by the father on November 15, 1972. The trial was lengthy, and judgment changing the custody was rendered February 27, 1973.
Mrs. Calvert had married Mark Calvert on May 22, 1971 in Lafayette. They lived together only a short time. At the end of December, 1971 Mrs. Calvert moved from Lafayette to Shreveport. She rented a house in a neighborhood where she had relatives. In September of 1972 Mrs. Calvert obtained employment as a “hostess” (she was the only waitress) in a lounge near the airport in Shreveport. Her pay was $75.00 a week, and she testified that she received about $75.00 in tips each week. She received $600.00 a month from Mr. Simon for the support of the children.
Mrs. Calvert justified her employment because of her lack of qualifications for other work, choosing to work at night on the theory that she would not be away from the children long during their waking hours. Mrs. Calvert’s working hours were from 7:00 P.M. until 2:00 o’clock in the morning. She sought baby sitters who would sleep at the house at night and take the children to school in the morning. Mrs. Calvert testified that she would pick the children up from school in the afternoon. She testified that she made no effort to obtain daytime work.
The children spent every other weekend with the father, who resided on a farm at Arnaudville, near Lafayette. From their conversations, the father determined to initiate an investigation. He instructed Mike Mier, employed as an investigator in the father’s law practice, to initiate an investigation into the activities of Mrs. Calvert. Mier obtained the services of a Mr. and Mrs. Smith, whom he met as the result of a visit to some stables in Shreveport where Mrs. Smith was employed.
Much of the testimony of the Smiths is both undisputed and corroborated by Mrs. Calvert.
It was Mrs. Calvert’s habit to leave her children at home in time to report to work at 7:00 P.M. A baby sitter was scheduled to arrive at 7:00 o’clock. Mrs. Calvert would work until 2:00 or 2:30 in the morning, then eat breakfast in a restaurant which adjoined the lounge, and return home around 3:00 or 4:00 o’clock, and sometimes much later, in the morning. She would retire; the baby sitter would get breakfast for the children and transport them to school. On some occasions Mrs. Calvert would travel to Marshall, Texas and spend time at the home of her paramour, John Burnham.
Mrs. Calvert’s relationship with Burn-ham is not disputed. She and Burnham both admitted to not infrequent sexual activity. Both, however, testified that they only had sexual relations in the privacy of Burnham’s home in Marshall, and denied sexual activity elsewhere. (The Smiths and other witnesses testified to having observed Mrs. Calvert in sexual intercourse in automobiles on the parking lot of the motel where she was employed).
It would serve no useful purpose to detail the other evidence of misconduct of Mrs. Calvert — evidence denied by her and given no weight by the courts below in removing the children from her custody. Her primary concern was her own pleasure, and not the welfare of her children. They lacked parental guidance. Mrs. Calvert failed to comply with the instructions of the trial judge on the prior rule — that she provide the children with proper adult custodians during her absence.
We agree with the finding of the trial judge that the home Mrs. Calvert provided for the children was unwholesome, that they were living in a state of relative neglect, and that Mrs. Calvert’s conduct was *287 serious enough to forfeit her right to the custody of her children.
There is no evidence m this record to connect the plaintiff Simon with any unprofessional or improper conduct in connection with this case. His reasons for entrusting the investigation to Mier were valid and sufficient. His instructions to Mier were to keep the investigation secret and confidential, and to prevent, if possible, participants in the investigation from knowing even the identity of other persons involved in the investigation. The plaintiff did not rely on reports from his investigator, but personally interviewed the witnesses, taking affidavits from them prior to filing the rule for change of custody. The allegations of misconduct were not carelessly made and are amply supported by testimony which is either unimpeached, uncontradicted, or admitted.
Nor is any misconduct by Mike Mier, an employee of plaintiff Simon, demonstrated by this record. Mier was available to the defendant during the trial, and could have •been summonsed and called on cross-examination since he was regularly employed by the plaintiff and had knowledge of facts connected with the case. C.C.P. 1634.
Plaintiff himself called Mike Mier on rebuttal to testify concerning a comic business card which had been introduced in evidence. On cross-examination the defendant attempted to ask questions about matters not covered in Mier’s rebuttal testimony. It is argued that the plaintiff curtailed this examination when he objected to the scope of the cross-examination, and the objection was sustained. However, the defendant merely accepted the trial judge’s ruling, and made no effort to demonstrate that there was any sound reason for prolonging the cross-examination. Although the ruling was erroneous, the fact that plaintiff objected was not remarkable; he habitually objected to questions. Defendant’s failure to examine Mier on his tole in the investigation cannot be laid at plaintiff’s door. Defendant failed to call the witness when her right to call him was indisputable.
We find no evidence m the record to show that Mier himself was guilty of any impropriety in investigating and gathering evidence in this case. The record, therefore, is free of evidence of plaintiff’s vicarious responsibility for any wrongdoing.
For these reasons, the judgment of the courts below, awarding the care, custody and control of the minor children Suzette, Clemille and Quentin Simon to the father, J. Minos Simon, is affirmed, at relator’s cost.